**CENTURY 21 REAL ESTATE CORPORATION,**
Appellant,

v.

**CENTURY LIFE OF AMERICA,**
Appellee.

**No. 91–1474.**

United States Court of Appeals,
Federal Circuit.

July 23, 1992.

Michael A. Grow, Vorys, Sater, Seymour & Pease, Washington, D.C., argued, for appellant.

Richard Bushnell, Trexler, Bushnell, Giangiorgi & Blackstone, Ltd., Chicago, Ill., argued, for appellee. With him on the brief was Cynthia A. Bushnell.

Before ARCHER, Circuit Judge, SMITH, Senior Circuit Judge, and RADER, Circuit Judge.

RADER, Circuit Judge.

Century 21 Real Estate Corporation filed Opposition No. 75,090 to Application No. 73/586,190 for registration of CENTURY LIFE OF AMERICA for insurance underwriting services. The Trademark Trial and Appeal Board dismissed the opposition. *Century 21 Real Estate v. Century Life of Am.*, Opposition No. 75,090 (TTAB June 20, 1991). Because the Board improperly applied the *du Pont* factors, this court reverses.

## BACKGROUND

Century 21 opposed Century Life's registration of CENTURY LIFE OF AMERICA for insurance underwriting services. Opposer has registered CENTURY 21 for services including real estate brokerage service,[1] insurance brokerage service,[2] and mortgage brokerage service.[3] Century 21 has also registered CENGUARD for insurance brokerage service,[4] and CENTURY-

NET[5] for leasing access time to a computer data base for mortgage loan information.

Century 21—incorporated in 1971—primarily franchises independent real estate brokers. Since 1978, Century 21 claims more real estate offices as affiliates than any other franchiser. In 1987, Century 21 agents handled 726,000 transactions, and had $55 billion in gross sales of residential and commercial properties. Since 1978, Century 21 has spent nearly $300 million on advertisements. Additionally, franchisees place their own advertisements—up to $125 million annually—using the Century 21 mark.

Before 1982 Century 21 began offering insurance services through its franchisees. The Century 21 offices marketed insurance under the NEIGHBORHOOD PROFESSIONAL INSURANCE AGENCY, INC. mark. This insurance generally protected real estate investments, i.e., homeowners', renters', and condominium owners' insurance. In 1982, Century 21 affiliates began to sell this insurance under the name CENGUARD. Opposer at that time also offered a warranty service under the name CENTURY 21 HOME PROTECTION PLAN. In 1985, Metropolitan Life Insurance Company acquired Century 21 and changed the mark used with the insurance services to CENTURY 21 INSURANCE SERVICES. Registration of CENTURY 21 for insurance brokerage services was issued in February 1987. A customer can purchase automobile, umbrella liability, life, and health insurance from a Century 21 insurance representative.

Applicant was founded in 1879 as the Mutual Aid Society of the German Lutheran Synod of Iowa. Applicant changed its name and organization several times during the ensuing century. In 1984, applicant changed its name to Century Life of America. Applicant made this change despite a Century Life survey which suggest-

---

1. Registration No. 1,063,488, issued April 12, 1977.

2. Registration No. 1,429,531, issued February 17, 1987.

3. Registration No. 1,304,095, issued November 6, 1984.

4. Registration No. 1,330,015, issued April 9, 1985. The CENGUARD mark covered homeowners', condominium and mobile home insurance and mortgage life insurance.

5. Registration No. 1,350,065, issued July 16, 1985.

ed a strong association in consumers' minds between the word "Century" and CENTURY 21. The Century Life of America name is often shortened to "Century." During his deposition, Century Life's Vice President repeatedly referred to the company as "Century." Advertisements have also abbreviated the company's name to "Century." Applicant primarily sells individual life insurance policies, annuities and security products. Applicant has 35 agency offices that generate premium income of about $120 million per year.

Applicant filed for registration of CENTURY LIFE OF AMERICA on March 5, 1986. Century 21 opposed registration. The Board dismissed Century 21's opposition.

## DISCUSSION

■ This court reviews the Board's fact finding under the clearly erroneous standard. *Kenner Parker Toys v. Rose Art Indus.*, 963 F.2d 350, 22 USPQ2d 1453, 1455 (Fed.Cir.1992). The Board's conclusions regarding confusing similarity, however, are questions of law, which this court reviews *de novo. Id.*

The Board determined that opposer had a prior registration of the mark CENTURY 21 for insurance brokerage services. The Board also found that the insurance underwriting services of the applicant were substantially the same as the services identified in opposer's registration of CENTURY 21. The Board noted that many real estate brokers provide insurance brokerage services. The Board also recognized the fame of the CENTURY 21 mark.

This court weighs several factors to determine the likelihood of confusion. The *following apply in this case:*

(1) The similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression.

(2) The similarity or dissimilarity and nature of the goods or services as described in an application or registration or in connection with which a prior mark is in use.

(3) The similarity or dissimilarity of established, likely-to-continue trade channels.

. . . .

(5) The fame of the prior mark (sales, advertising, length of use).

(6) The number and nature of similar marks in use on similar goods.

. . . .

*Weiss Assocs. v. HRL Assocs.*, 902 F.2d 1546, 1548–49, 14 USPQ2d 1840, 1842 (Fed. Cir.1990) (reciting factors given in *In re E.I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (CCPA 1973)). The Board erred in its application of these factors. This court reviews the factors relevant to this case in turn.

The word "Century" is central to both the opposer's mark and the application. The Board found that "Century" is the dominant element of CENTURY LIFE OF AMERICA due to applicant's disclaimer of the rest of its mark. Indeed both CENTURY 21 and CENTURY LIFE OF AMERICA begin with that term. Thus, upon encountering each mark, consumers must first notice this identical lead word. Century 21 has registrations for CENTURYNET and CENTURY WRITE which underscore the significance of this initial and central term. Century 21 has also marketed insurance services under variations of this lead term, e.g., CENGUARD. This use of marks featuring variations of "Century" to sell insurance would increase the likelihood that consumers would misconstrue the source of insurance under the mark CENTURY LIFE OF AMERICA. In addition, a survey conducted by the applicant showed a high association in consumers' minds of the term "Century" with Century 21. Finally applicant has shortened its name to "Century," in advertizing, further compounding the likelihood of conveying a confusing commercial impression.

Century 21 musters considerable evidence to show confusing similarity in appearance, sound, connotation, and commercial impression. A proper weighing of this evidence through the lens of the other *du Pont* factors tends to magnify the likelihood of consumer confusion. For instance,

applicant seeks registration of its mark for services identical to opposer's registered use of its mark. This second factor accentuates the likelihood of consumer confusion about the sources of services marketed under similar marks.

The Board, however, gave insufficient weight to the use of these marks on identical services. When marks would appear on virtually identical goods or services, the degree of similarity necessary to support a conclusion of likely confusion declines. *Mobil Oil v. Pegasus Petroleum,* 818 F.2d 254, 258, 2 USPQ2d 1677, 1680 (2d Cir.1987); *E. Remy Martin & Co., S.A. v. Shaw–Ross Int'l Imports,* 756 F.2d 1525, 1530, 225 USPQ 1131, 1134 (11th Cir.1985); *Exxon Corp. v. Texas Motor Exch.,* 628 F.2d 500, 505, 208 USPQ 384, 388 (5th Cir.1980); *SquirtCo v. Seven–Up,* 628 F.2d 1086, 1091, 207 USPQ 897, 900 (8th Cir. 1980). Despite noting that the opposer's and applicant's services were substantially the same, this finding did not alter the Board's improper tolerance for substantial and confusing similarities between the competing marks.

Another relevant *du Pont* factor involves the similarity of trade channels. The Board found that both opposer and applicant advertise in the same media, offer the same services to the same types of purchasers, and employ the same trade channels. These findings enhance the likelihood of confusion. Instead of giving proper weight to this factor, the Board discounted this consideration because opposer had not shown that the same insurance agent offered both parties' services. An opposer need not establish the sale of both parties services by the same vendor to show employment of the same trade channels. *du Pont,* 476 F.2d at 1357. Rather, this factor covers "similarity and dissimilarity of established, likely-to-continue trade channels." *Id.* at 1361. This court does not limit channels of trade to identical stores or agents. Rather a channel of trade includes the same type of distribution channel. For example, this court has held channels of trade identical when products were sold under opposing marks in super-markets and grocery stores across the country. *Specialty Brands v. Coffee Bean Distrib.,* 748 F.2d 669, 672, 223 USPQ 1281, 1282 (Fed.Cir.1984). An opposer does not have the burden to show sales of an infringing product by a specific chain of supermarkets or agents. Rather to invoke this *du Pont* factor, an opposer must show the sale of an infringing product in supermarkets or by agents in general, i.e., in similar trade channels. The Board improperly applied this factor.

This court has acknowledged that fame of the prior mark, another *du Pont* factor, "plays a dominant role in cases featuring a famous or strong mark." *Kenner Parker Toys,* 963 F.2d at 352, 22 USPQ2d at 1456. The Board acknowledged the fame of CENTURY 21. Nevertheless the Board suggested that the fame of the mark weighed against a likelihood of confusion. In *Kenner Parker Toys,* an opinion issued after the Board's decision, this court clarified that the fame of a mark cannot reduce its protection against confusingly similar marks. *Id.* at 353, 22 USPQ2d at 1457. This court stated: "the Lanham Act's tolerance for similarity between competing marks varies inversely with the fame of the prior mark." *Id.* at 353, 22 USPQ2d at 1456. Thus, the fame of CENTURY 21 increases the likelihood of confusion with applicant's mark. The Board erred in its consideration of the fame of the mark.

Another *du Pont* factor concerns the use of similar marks on similar goods. Because "Century" is used in a variety of trade names and marks, the Board inferred "that the public would not regard CENTURY as such an unusual term in a trade name or mark that they would expect all companies with CENTURY in their name to be related, or all products or services with CENTURY in their marks to emanate from a single source." *Century 21 Real Estate,* slip op. at 14. The Board incorrectly applied this *du Pont* factor. The relevant *du Pont* inquiry is "[t]he number and nature of similar marks in use *on similar goods.*" *Weiss,* 902 F.2d at 1548, 14 USPQ2d at 1842 (emphasis added). It is less relevant that "Century" is used on

878

unrelated goods or services such as "Century Dental Centers" or "Century Seafoods." The relevant inquiry examines the number and nature of similar marks used for services similar to insurance brokerage services. The paucity of service marks containing "Century" in businesses similar to insurance suggests that CENTURY 21 is indeed a unique mark for insurance services. This factor again magnifies the likelihood of confusion.

Finally, the Board noted that this case was "difficult to resolve." In such instances, "[a]ny doubts about likelihood of confusion ... must be resolved against applicant as the newcomer." *In re Hyper Shoppes (Ohio)*, 837 F.2d 463, 464–65, 6 USPQ2d 1025, 1026 (Fed.Cir.1988); *accord Giant Food v. Nation's Foodservice*, 710 F.2d 1565, 218 USPQ 390, 395 (Fed.Cir.1983); *SquirtCo v. Tomy Corp.*, 697 F.2d 1038, 1041, 216 USPQ 937, 939 (Fed.Cir.1983). This is especially true when the prior mark is famous. *Kenner Parker Toys*, 963 F.2d at 355, 22 USPQ2d at 1458.

## CONCLUSION

On this record, a weighing of all the *du Pont* factors show that the CENTURY LIFE OF AMERICA is likely to cause confusion with CENTURY 21 for insurance services. The Board improperly concluded that applicant's mark would not cause confusion about the source of identical products. Therefore, the Board's dismissal of Century 21's opposition is

REVERSED.