9/17/01

**THIS DISPOSITION
IS CITABLE AS PRECEDENT
OF THE T.T.A.B.**

Paper No. 11
TEH

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re Code Consultants, Incorporated
_____

Serial No. 75/645,560
_____

Paul M. Denk for Code Consultants, Incorporated.

Tracy L. Fletcher, Trademark Examining Attorney, Law Office 115 (Tomas Vlcek, Managing Attorney).

_____

Before Cissel, Hairston and Holtzman, Administrative Trademark Judges.

Opinion by Holtzman, Administrative Trademark Judge:

An application has been filed by Code Consultants, Incorporated to register the mark shown below for "fire prevention consultation in the nature of fire alarm and fire sprinkler designs."[1]  The wording CODE CONSULTANTS, INC. has been disclaimed.

---

[1] Application Serial No. 75/645, 560, filed February 22, 1999, alleging a bona fide intention to use the mark in commerce.



The Trademark Examining Attorney has refused registration under Section 2(d) of the Trademark Act on the ground that applicant's mark, if used in connection with applicant's services, would so resemble the mark CCI, registered for "indicating membership in an organization of construction inspectors," as to be likely to cause confusion.[2]

When the refusal was made final, applicant appealed. Briefs have been filed, but an oral hearing was not requested.

Here, as in any likelihood of confusion analysis, we look to the factors set forth in In re E. I. du Pont de Nemours & Co., 476 F.2d 1357, 177 USPQ 563 (CCPA 1973), giving particular attention to the factors most relevant to the case at hand. See Federated Foods, Inc. v. Fort Howard Paper Co., 544 F.2d 1098, 192 USPQ 24 (CCPA 1976); and In re Azteca Restaurant Enterprises Inc., 50 USPQ2d 1209 (TTAB 1999).

The Examining Attorney argues that applicant's services are closely related to the services performed by registrant's

---

[2] Registration No. 1,763,542; issued April 6, 1993; affidavits under Sections 8 and 15 accepted and acknowledged, respectively.

members. The Examining Attorney maintains that registrant's members perform construction inspection services for building owners and developers that would necessarily include inspection and approval of fire alarm and fire sprinkler systems in buildings, as well as the review of designs for fire alarm and fire sprinkler systems in construction plans. The Examining Attorney has made of record a number of references retrieved from the NEXIS database to show that construction inspectors routinely inspect physical structures and review construction plans for compliance with applicable building and fire codes. The Examining Attorney maintains that applicant is "essentially advising building owners and developers of how their fire alarms and fire sprinkler systems should be designed in order to comply with the same fire codes for which the registrant's member[s] are providing inspections." The Examining Attorney concludes that the building owners and developers who are the purchasers of applicant's services would believe that applicant's services "originate with a member of the registrant's organization" or that applicant "was a member of the registrant's collective membership organization."

Applicant argues that there is no "relatedness between the services and their channels of trade as to give rise to a likelihood of confusion." (Brief, p. 8, internal quotations omitted.) Applicant contrasts its services, which involve "the

3

design of alarm systems and fire sprinkler designs for the building owners and developers to make sure it complies with building codes in the [relevant] jurisdiction," with the use of registrant's mark which merely indicates membership in an organization of construction inspectors. Applicant contends that registrant is not "concerned with designs of such items as alarms and fire sprinklers" and that, although applicant ensures that the fire alarm and sprinkler systems it designs are in compliance with established building codes, "applicant does not provide construction inspections." Applicant also contends that "the building owners and developers who purchase Applicant's services are sophisticated purchasers who exercise a high degree of care in their purchases, and certainly are aware of the source of the services."

The mere fact that one mark identifies services and the other identifies a collective membership mark does not, in itself, overcome the likelihood of confusion. As the Examining Attorney correctly points out, likelihood of confusion may exist from contemporaneous use of a collective membership mark on the one hand, and a trademark or a service mark on the other. See In re National Novice Hockey League, Inc., 222 USPQ 638 (TTAB 1984). The ultimate inquiry, regardless of the nature of the involved marks, is whether "relevant persons" are likely to be confused. See generally Electronic Design & Sales Inc. v. Electronic Data

Systems Corp., 954 F.2d 713, 21 USPQ2d 1388 (Fed. Cir. 1992),
citing Astra Pharmaceutical Prods. v. Beckman Instruments, 718
F.2d 1201, 1206, 220 USPQ 786, 790 (1st Cir. 1983).

Although the ultimate inquiry is the same, the analysis
under Section 2(d) with respect to collective membership marks is
somewhat different from that with respect to trademarks or
service marks.[3] The trademark or service mark analysis typically
involves a determination of likelihood of confusion among
purchasers as to the source of goods or services. However, a
collective membership mark does not involve purchasers of goods
or services. The sole purpose of a collective membership mark is
to indicate membership in an organization. While goods or
services may be provided by the members of an organization, a
collective membership mark, as used or displayed by the members
of an organization, serves only to identify the fact that such
members belong to the collective organization and to inform
relevant persons of the members' association with the

---

[3] Cf. Racine Industries Inc. v. Bane-Clene Corp., 35 USPQ2d 1832 (TTAB 1994) concerning the determination of descriptiveness of a collective membership mark under Section 2(e)(1) of the Trademark Act.

organization.[4]  See, e.g., Allstate Life Insurance Company et al.
v. Cuna International, Inc., 169 USPQ 313 (TTAB 1971); and also,
e.g., Racine Industries Inc., *supra*.  Thus, the finding of
likelihood of confusion between a collective membership mark and
a trademark or service mark is not based on confusion as to the
source of any goods or services which happen to be provided by
the members of the collective organization.  Rather, the question
is whether relevant persons are likely to believe that the
trademark owner's goods or services emanate from or are endorsed
by or in some other way associated with the collective
organization.[5]

Moreover, the term "relevant persons," for purposes of a
collective membership mark, would not consist of "purchasers," as
such, but rather those persons or groups of persons for whose
benefit the membership mark is displayed.  See, e.g., Electronic
Design & Sales v. Electronic Data Systems, *supra* at 1390 ["For

---

[4] In addition to denoting membership, the same mark may also be used
by the organization as, for example, a service mark or by the members
of the organization as a collective service mark.  Whether or not
registrant is actually using its mark in this manner is not relevant to
our decision because the determination of likelihood of confusion must
be based solely on its function as a collective membership mark as set
forth in the registration.  See, e.g., In re Dixie Restaurants Inc.,
105 F.3d 1405, 41 USPQ2d 1531 (Fed. Cir. 1997).

[5] Section 2(d) of the Trademark Act protects not only against confusion
as to source, but also as to affiliation, connection or sponsorship.
See J.T. McCarthy*, McCarthy on Trademarks and Unfair Competition,* §
23:8 (4th ed. 2000); Hilson Research Inc. v. Society for Human Resource
Management, 27 USPQ2d 1423 (TTAB 1993); and American Stock Exchange,
Inc. v. American Express Co., 207 USPQ 356 (TTAB 1980).

determining likelihood of confusion,...'relevant persons' is not always limited to purchasers, past or future. For some owners of marks, such as the American Red Cross with its well-known mark, there are no purchasers. In these instances, 'relevant persons' would encompass all who might know of their services and then become purchasers of goods or services of others."]. See also, In re Artic Electronics Co., Ltd., 220 USPQ 836 (TTAB 1983) [likelihood of confusion is not limited to "purchaser" confusion].

The question, then, is whether applicant's service mark and registrant's collective membership mark would be encountered by relevant persons under circumstances that could, because of the similarity of the marks, lead those persons to mistakenly believe that there is some connection between applicant and registrant's organization.

First, the purchasers of applicant's services and the relevant public for registrant's membership mark are, in part, the same. Applicant's services are directed primarily to building owners and developers. Registrant's mark is used by registrant's members to indicate to the relevant public that its members belong to registrant's organization of construction inspectors. In the absence of any limitation in the registration, we must assume the relevant public includes those who are in the construction inspection industry as well as those

7

to whom construction inspections are offered, such as building owners and developers, the very purchasers of applicant's services. The membership mark could be displayed in rendering the inspection service to the building owner or developer so as to advertise the member's affiliation with the membership organization even if the service itself is being performed under a different mark. See, e.g., Boise Cascade Corporation v. Mississippi Pine Manufacturers Association, 164 USPQ 364 (TTAB 1969). Thus, applicant's service mark and registrant's collective membership mark could be encountered by the same members of the relevant public.

Moreover, the circumstances under which a relevant person would encounter the marks in the marketplace would be likely to result in confusion. Applicant's services and the services provided by registrant's members are closely related. Registrant's members perform inspections of construction sites to determine, inter alia, fire and safety code compliance. Applicant consults in the design of fire alarm and sprinkler systems which would meet applicable fire and safety codes. There are, as applicant points out, obvious differences between these two services. However, the question is not whether purchasers of applicant's services can differentiate one activity from the other, but rather, as noted above, whether those persons who encounter applicant's mark in connection with its services and

registrant's mark as used by its members would be likely to assume there is a connection or relationship between the two organizations.

As the evidence made of record by the Examining Attorney shows, inspection of fire and sprinkler systems is an important part of the construction inspection process. It is clear that there is a complementary relationship between these two activities. For example, a developer who is planning to purchase or renovate an existing structure may need to call for a construction inspector to evaluate, among other things, the condition of the fire alarm and sprinkler systems to determine whether they conform to local building and fire safety codes. The developer may then, if necessary, turn to a consultant in order to determine how to bring any such systems into compliance with applicable codes. Upon subsequently encountering applicant's consulting services in this field under applicant's mark, even if at a later time with respect to a different property, the developer would be likely to assume mistakenly that applicant's services or systems are approved or endorsed by registrant or that there is some relationship or connection between the two organizations if applicant's services and registrant's organization are identified by similar marks.

We turn then to the marks. The Examining Attorney argues that the marks create similar commercial impressions, noting that

the applicant's mark incorporates registrant's mark in its entirety. The Examining Attorney maintains that neither the descriptive wording nor the design elements in applicant's mark serve to distinguish the marks because the dominant portion of the two marks is the same.

Applicant, on the other hand, argues that the marks, when properly considered as a whole, are distinctly different in sound, appearance, meaning and commercial impression. Applicant contends that the word portions of the marks are not similar because applicant's mark contains the words CODE CONSULTANTS INC. which, although considered descriptive, must still be considered in determining likelihood of confusion. Applicant also argues that the term CCI in its mark is an acronym of its trade name and that the stylized lettering and distinctive design in applicant's mark are very significant elements, all of which, according to applicant, serve to further distinguish applicant's mark from the mark in the cited registration.

While marks must be compared in their entireties, there is nothing improper in giving more weight to certain features of the marks as being more dominant or otherwise significant. See In re National Data Corp., 753 F.2d 1056, 224 USPQ 749 (Fed. Cir. 1985). When registrant's mark CCI and applicant's mark CCI CODE CONSULTANTS, INC. and design are considered as a whole, giving appropriate weight to the features thereof, we find that the

10

marks are similar in appearance, meaning and commercial impression.

The dominant portion of applicant's mark is the letter combination CCI. That same set of letters is registrant's entire mark. Applicant's disclaimed wording, CODE CONSULTANTS, INC., while not ignored in the analysis, is highly descriptive of applicant's services and therefore less significant in creating the mark's commercial impression. See In re National Data Corp., *supra*., and, e.g., Hilson Research Inc. v. Society for Human Resource Management, *supra*. That wording is also visually less prominent than the letters CCI. In addition, design elements such as those appearing in applicant's mark are generally less important than the word portion of the mark in creating an impression. See In re Appetito Provisions Co., 3 USPQ2d 1553 (TTAB 1987). Under actual marketing conditions, the public does not necessarily have the opportunity to make side-by-side comparisons between marks. Dassler KG v. Roller Derby Skate Corp., 206 USPQ 255 (TTAB 1980). Here, it is the letters CCI which are most likely to be remembered by the relevant public when seeing either mark.

Moreover, we have no evidence of third-party use or registration of the letters CCI in connection with similar services or activities, or any other evidence in the record to indicate that CCI is weak or has some meaning in the relevant

11

field.  Thus, we have no reason to find that registrant's mark is entitled to anything less than a broad scope of protection.[6] See, e.g., Century 21 Real Estate Corp. v. Century Life of America, 970 F.2d 874, 23 USPQ2d 1698 (Fed. Cir. 1992).  In addition, it has been held that marks comprising arbitrary arrangements of letters are more likely to create confusion than other types of marks.  See Edison Bros. Stores, Inc. v. Brutting E.B. Sport-International GmbH, 230 USPQ 530 (TTAB 1986) and Hilson Research, Inc. V. Society for Human Resources Management, *supra*.

In view of the highly similar marks, both consisting primarily of the identical letters CCI, and the manner in which those marks would be encountered in the marketplace, even the sophisticated and knowledgeable purchasers of applicant's services would be likely to be confused about the relationship between applicant and registrant's organization.[7]  See, e.g., In re Total Quality Group Inc., 51 USPQ2d 1474 (TTAB 1999).

---

[6] We note applicant's reliance on Local Trademarks Inc. v. The Handy Boys Inc., 16 USPQ2d 1156 (TTAB 1990).  However, each case must be decided on its own facts and moreover, the Board pointed out in that case that the mark in question, LITTLE PLUMBER, could not be considered a strong mark for either of the identified goods or services.

[7] This case is also distinguishable from Electronic Design & Sales Inc. v. Electronic Data Systems Corp., *supra*, relied on by applicant.  In that case, not only were the parties' respective goods and services on which the marks were used deemed to be "different" but the respective purchasers were deemed to be "substantially different."  (*Supra*, at 1393).

To the extent that there is any doubt on the issue of likelihood of confusion, it is settled that such doubt must be resolved in favor of the prior registrant.  In re Shell Oil Co., 992 F.2d 1204, 26 USPQ2d 1687 (Fed. Cir. 1993).

**Decision:**  The refusal to register is affirmed.