THIS DISPOSITION IS
CITABLE AS PRECEDENT
OF THE TTAB

Mailed:
August 11, 2004

Paper No. 30
Bottorff

# UNITED STATES PATENT AND TRADEMARK OFFICE

—————

## Trademark Trial and Appeal Board

—————

Baseball America, Inc.[1]
v.
Powerplay Sports, Ltd.

—————

Opposition No. 91120166
to application Serial No. 75787673
filed on August 30, 1999

—————

Opposition No. 91120978
to application Serial No. 75787674
filed on August 30, 1999

—————

Susan Freya Olive of Olive & Olive, P.A. for Baseball America, Inc.

Powerplay Sports, Ltd., pro se.

—————

Before Sams, Chief Administrative Trademark Judge, and Bottorff and Rogers, Administrative Trademark Judges.

Opinion by Bottorff, Administrative Trademark Judge:

The above-captioned opposition proceedings were consolidated by order of the Board dated February 6, 2002.

---

[1] In the prefaces to its two notices of opposition, opposer identified itself as "Baseball American, Inc.," and that is how opposer was identified in the Board's orders instituting the proceedings. It is apparent from opposer's other filings that

The cases are now ready for decision and shall be decided in this single opinion, which shall be entered in the proceeding files of both proceedings.

In application Serial No. 75787673 (involved in Opposition No. 91120166), applicant seeks registration on the Principal Register of the mark BASEBALL AMERICANA (in typed form; BASEBALL disclaimed) for goods identified in the application as "posters" in International Class 16.[2]  In application Serial No. 75787674 (involved in Opposition No. 91120978), applicant seeks registration on the Principal Register of the mark BASEBALL AMERICANA (in typed form; BASEBALL disclaimed) for services recited in the application as "educational services, namely, conducting courses, seminars, conferences and workshops in the field of baseball history and trivia, and photography; organizing baseball exhibitions for stadiums, museums, theme parks, libraries and other public venues; providing facilities for educational, entertainment, sporting and cultural activities in the form of a baseball hall of fame and museum," in International Class 41.[3]  Both applications were filed on

---

its name is "Baseball America, Inc."  The Board has updated its records accordingly.

[2] The application is a use-based application under Trademark Act Section 1(a), 15 U.S.C. §1051(a).  January 1995 is alleged as the date of first use of the mark anywhere, and July 1996 is alleged as the date of first use of the mark in commerce.

[3] The application is a use-based application under Trademark Act Section 1(a), 15 U.S.C. §1051(a).  1986 is alleged as the date of

August 30, 1999, and both applications include applicant's claim of acquired distinctiveness under Trademark Act Section 2(f), 15 U.S.C. §1052(f).

Opposer has opposed registration of the marks depicted in both of applicant's applications.[4] As grounds for opposition in both cases, opposer has alleged that it is the prior user of the mark BASEBALL AMERICA on or in connection with various baseball-related goods and services; that it is the owner of Principal Register Registration No. 1346082,[5] which is of the mark depicted below (BASEBALL disclaimed)



first use of the mark anywhere and the date of first use of the mark in commerce.

[4] Applicant's contention that the notices of opposition were not timely-filed is without merit.  In both cases, opposer timely requested and was granted several extensions of time to oppose, pursuant to Trademark Rule 2.102, 37 C.F.R. §2.102.  The Board's October 24, 2000 order in each case extended the time for filing the notice of opposition to November 15, 2000.  Opposer's notices of opposition in both cases were accompanied by certificates of mailing dated November 15, 2000, and thus were timely-filed.

[5] Issued July 2, 1985.  Affidavits under Sections 8 and 15 accepted and acknowledged.  The registration was introduced as an exhibit to the testimony deposition of opposer's witness Lee Folger, who testified that the registration is extant and owned by opposer (via assignment).  (Folger Depo. at page 22, Exhibit Nos. 3 and 4.)

for goods identified in the registration as "publications, namely newspapers, books, and calendars relating to baseball, principally items concerning minor league and college baseball," in International Class 16; and that applicant's mark, as applied to the goods and services identified in applicant's applications, so resembles opposer's previously-used and registered mark BASEBALL AMERICA as to be likely to cause confusion, to cause mistake, or to deceive.  Trademark Act Section 2(d), 15 U.S.C. §1052(d).

After filing several papers which failed to comply with the Board's pleading rules, applicant eventually filed proper answers in both cases by which it denied the salient allegations of the notices of opposition.

The record includes the pleadings herein[6] and the files of the opposed applications.  Additionally, opposer submitted the following evidence during its assigned testimony period:  the testimony deposition of its publisher, Lee Folger, and exhibits thereto; a notice of reliance on certain discovery materials and certain public records; and a second (conditional) notice of reliance on

---

[6] However, the factual allegations made in the pleadings are not evidence of the matters alleged, except insofar as they might be deemed to be admissions against interest.  *See* TBMP §704.06(a)(2d ed. 1st rev. March 2004) and cases cited therein.  Likewise, the exhibits attached to the pleadings are not evidence of record. *See* Trademark Rule 2.122(c), 37 C.F.R. §2.122(c); *see also* TBMP §704.05(a)(2d ed. 1st rev. March 2004) and cases cited therein.

4

certain discovery materials.[7]  Applicant submitted no

evidence during its assigned testimony period.[8]  Opposer and

---

[7] Opposer's first notice of reliance includes opposer's reliance on all of its Requests for Admission; opposer argues that applicant's responses to the requests were untimely, and that all of the requests therefore are deemed admitted, pursuant to Fed. R. Civ. P. 36(a).  Opposer's second (conditional) notice of reliance covers only certain of opposer's Requests for Admission, i.e., those which applicant expressly admitted when it finally served its responses.  By way of background, we note that opposer served applicant with the requests on December 12, 2001, and served what apparently was a second courtesy copy of the requests on January 29, 2002; applicant did not serve its responses to the requests until March 15, 2002.  However, in its February 6, 2002 order consolidating the proceedings and resetting trial dates, the Board, noting the prior procedural history of the two cases (including the June 13, 2001 issuance of a notice of default to applicant in Opposition No. 91120166, and the Board's May 23, 2001 order in Opposition No. 91120978 pertaining to the several procedurally insufficient answers applicant had filed in that case), ruled that proceedings in both cases "are considered to have been suspended pending disposition of the notice of default in Opposition No. 120,166 and the informality of the answer in Opposition 120,978."  In view of this ruling, by which proceedings were deemed to have been suspended prior to opposer's December 2001 service of the requests for admissions and prior to what otherwise would have been the due date for applicant's response thereto, and in view of the fact that applicant in fact finally responded to the requests, and in accordance with the discretion afforded to the Board by Fed. R. Civ. P. 36(a), we decline to treat the requests for admissions as having been admitted by applicant for failure to timely respond.  Accordingly, we shall consider only those requests for admission which applicant has expressly admitted, as set forth in opposer's second (conditional) notice of reliance.

[8] Pursuant to the Board's May 2, 2003 order resetting trial dates after a suspension of proceedings, applicant's testimony period was set to close on August 30, 2003, opening thirty days prior thereto.  Applicant submitted no testimony or other evidence during this assigned testimony period.  Applicant had submitted various documentary materials at various other times during the course of this proceeding, including the materials attached to applicant's several informal answers and to its response to the Board's notice of default, the materials attached to its April 15, 2002 response to opposer's motion to extend trial dates, and the materials attached to its February 28, 2003 "arbitration brief."  These materials, all of which were submitted outside of applicant's assigned testimony period (and which in any event fail to comply with the Board's evidentiary rules), shall be given no consideration.  *See* Trademark Rules 2.121(a)(1) and

applicant filed main briefs, and opposer filed a reply brief.  No oral hearing was requested.

A preliminary interlocutory matter requires attention. Applicant's brief, captioned "'Claimant's Notice regarding Registration of Mark' and Documents Attached thereto," was filed with a certificate of mailing dated January 12, 2004. On January 22, 2004, opposer moved to strike applicant's filing on the ground of untimeliness and on certain other grounds.  In its March 23, 2004 order, the Board found that applicant's brief was timely-filed, but deferred ruling on opposer's other objections until final decision.  The Board now has considered opposer's objections, and rules as follows.

First, opposer's objection on the ground that the brief was filed by a party other than applicant is overruled. Powerplay Sports, LLC, the party identified in the brief, and Powerplay Sports, Ltd., the applicant of record, would appear to be one and the same entity, i.e., a Nevada Limited Liability Company located at 1913 Pine Tree Drive, Prescott, AZ 86303.  Absent any evidence to the contrary, we deem "Powerplay Sports, LLC" to be merely another name for applicant, Powerplay Sports, Ltd.

---

2.123(l), 37 C.F.R. §§2.121(a)(1) and 2.123(l); *see generally* TBMP §§703.01(c) and 706 (2d ed. 1st rev. March 2004) and cases cited therein.

6

However, opposer is correct in arguing that the documentary materials attached as exhibits to applicant's brief cannot be considered, because they were not made of record during trial. (See *supra* at footnote 8.) *See* TBMP §704.05(b)(2d ed. 1st rev. March 2004) and cases cited therein. Likewise, we accord no evidentiary value or consideration to any factual assertions made by applicant in the brief which are not supported by competent evidence in the record. *See* TBMP 704.06(b)(2d ed. 1st rev. March 2004) and cases cited therein. Opposer's motion to strike therefore is granted, to the extent that we shall give no consideration to these exhibits and factual statements.

Opposer has established that it is the owner of a valid and subsisting registration of the mark BASEBALL AMERICA. See *supra* at footnote 5. In view thereof, and because opposer has asserted a non-frivolous likelihood of confusion claim, we find that opposer has established its standing to oppose registration of applicant's marks in both opposition proceedings. *See, e.g., Lipton Industries, Inc. v. Ralston Purina Company*, 670 F.2d 1024, 213 USPQ 185 (CCPA 1982).

Because opposer has established the current status and title of its pleaded registration, Section 2(d) priority is not at issue with respect to the mark and the goods set forth in that registration, i.e., "publications, namely newspapers, books, and calendars relating to baseball,

7

principally items concerning minor league and college baseball." *See King Candy Co., Inc. v. Eunice King's Kitchen, Inc*., 496 F.2d 1400, 182 USPQ 108 (CCPA 1974). We also find that opposer has established its Section 2(d) priority with respect to "posters," the goods identified in applicant's Class 16 application, and with respect to "educational services, namely, conducting courses, seminars, conferences and workshops in the field of baseball history…" which are included among the services recited in applicant's Class 41 application.[9] Because applicant submitted no timely and competent evidence establishing use of its mark on the goods and services identified in its registrations, the earliest date upon which applicant may rely for priority purposes is the August 30, 1999 filing date of the

---

[9] Opposer's publisher, Lee Folger, also testified that opposer has used its mark in connection with services that are similar or related to the other services recited in applicant's Class 41 application. However, although he testified as to opposer's current and past use of its mark in connection with such services, he did not identify the dates of first use of the mark in connection with such services, nor can we ascertain from his testimony that opposer's use of its mark in connection with such services commenced prior to applicant's August 30, 1999 application filing date. It is settled, however, that in order to prevail on a Section 2(d) ground of opposition, an opposer need not prove priority and likelihood of confusion as to all of the goods or services identified in the applicant's application. Rather, if priority and likelihood of confusion are established as to any of the goods or services identified in an opposed class of goods or services, the opposition to registration of the mark as to all of the goods or services identified in that class will be sustained. *See Tuxedo Monopoly, Inc. v. General Mills Fun Group*, 648 F.2d 1335, 209 USPQ 986 (CCPA 1981); *Shunk Manufacturing Company v. Tarrant Manufacturing Company*, 137 USPQ 881 (CCPA 1963); *Alabama Board of Trustees v. BAMA-Werke Curt*

applications.[10]  Opposer has proven that it has used its BASEBALL AMERICA mark on posters since the 1980's, a date prior to applicant's August 30, 1999 filing date.  (Folger Depo. at 39-40, and Exh. No. 9.)  Opposer also has proven that it used its mark in February 1999 (prior to applicant's August 30, 1999 application filing date) in connection with an educational seminar on baseball history.  (Folger Depo. at 49-51, and Exh. No. 13.)

Having found that opposer has established its Section 2(d) priority as to the goods and services identified in applicant's applications (and that priority is not at issue with respect to the goods identified in opposer's pleaded registration), we turn next to the question of whether opposer has established the "likelihood of confusion" element of its Section 2(d) ground of opposition.  Our likelihood of confusion determination under Section 2(d) is based on an analysis of all of the probative facts in evidence that are relevant to the likelihood of confusion factors set forth in *In re E. I. du Pont de Nemours and Co.,* 476 F.2d 1357, 177 USPQ 563 (CCPA 1973).  In considering the evidence of record on these factors, we keep in mind that "[t]he fundamental inquiry mandated by §2(d) goes to the

---

*Baumann*, 231 USPQ 408, 411 n.7 (TTAB 1986); and *In re Alfred Dunhill Ltd*., 224 USPQ 501 (TTAB 1984).
[10] The dates of use alleged in applicant's applications are not evidence of such use, nor are the application specimens evidence

cumulative effect of differences in the essential characteristics of the goods and differences in the marks." *Federated Foods, Inc. v. Fort Howard Paper Co.,* 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976).

We turn first to the issue of whether applicant's mark and the opposer's mark, when compared in their entireties in terms of appearance, sound and connotation, are similar or dissimilar in their overall commercial impressions. The test is not whether the marks can be distinguished when subjected to a side-by-side comparison, but rather whether the marks are sufficiently similar in terms of their overall commercial impression that confusion as to the source of the goods or services offered under the respective marks is likely to result. The focus is on the recollection of the average purchaser, who normally retains a general rather than a specific impression of trademarks. *See Sealed Air Corp. v. Scott Paper Co.,* 190 USPQ 106 (TTAB 1975). Moreover, where, as in the present case, the marks would appear on virtually identical goods and services, the degree of similarity between the marks which is necessary to support a finding of likely confusion declines. *Century 21 Real Estate Corp. v. Century Life of America*, 970 F.2d 874, 23 USPQ2d 1698 (Fed. Cir. 1992).

---

on applicant's behalf. *See* Trademark Rule 2.122(b), 37 C.F.R. §2.122(b)).

10

Applying these legal principles in the present case, we find that opposer's mark BASEBALL AMERICA and applicant's mark BASEBALL AMERICANA are more similar than dissimilar when viewed in their entireties in terms of appearance, sound, connotation and overall commercial impression. Visually and aurally, the marks differ only as to the final two letters of applicant's mark. Although the marks are not identical in connotation, they are similar, in that Americana, by definition, pertains to America.[11] Both marks generally connote "baseball in America" or "American baseball." Viewed in their entireties, we find that the marks create similar overall commercial impressions. When we factor in the legally identical nature of the parties' goods and services and the renown of opposer's mark (see discussion *infra*), both of which decrease the degree of similarity between the marks which is necessary to find a likelihood of confusion, we find that the marks are sufficiently similar that confusion is likely to result from the parties' use of these marks on or in connection with their goods and services.

---

[11] Webster's Ninth New Collegiate Dictionary (1990), at 78, defines "Americana" as "materials concerning or characteristic of America, its civilization, or its culture." The Board may take judicial notice of dictionary definitions. *See, e.g., University of Notre Dame du Lac v. J. C. Gourmet Food Imports Co.,* 213 USPQ 594 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983); see also TBMP §704.12(a)(2d ed. 1st rev. March 2004).

Next, we find that applicant's goods and services, as identified in the applications, are legally identical to goods and services as to which opposer has proven it is the prior user of its mark, i.e., posters and educational seminars in the field of baseball. We also find that applicant's goods and services are sufficiently related to the goods identified in opposer's pleaded registration that confusion is likely to result from the parties' use of these confusingly similar marks. Opposer's publications, like applicant's goods and services, all pertain to the sport of baseball. Moreover, opposer has published books which pertain, like applicant's goods and services, to the historical aspects of baseball. (Folger Depo. at 34, 84-85.)

We also find that the parties' respective goods and services are or could be marketed in the same trade channels to the same classes of purchasers, i.e., to baseball fans. Applicant has admitted as much. (Opposer's Request for Admissions, No. 33.) These are general consumers who would not be expected to exercise more than ordinary care in purchasing the goods and services. Likewise, applicant's and opposer's publications and services are inexpensive consumer items which can be purchased without a great degree of care. (Folger Depo. at 74-77.)

12

Next, the evidence of record establishes that opposer's BASEBALL AMERICA magazine is considered in the trade to be a "publication of record" for statistics and other information pertaining to baseball and baseball players.  (Folger Depo. at 16-17, 22-23.)  Opposer's statistics, rankings and player evaluations are regarded by those in the trade, and by other media outlets, as definitive reference materials.  For example, USA Today publishes opposer's rankings of college baseball teams, and identifies such rankings as the "Baseball America Top 25."  (Folger Depo. at 79-80, Exh. No. 24.)  Opposer's editors have appeared on ESPN as on-air commentators in connection with coverage of college baseball, the annual college and amateur baseball drafts, and the major league expansion draft.  (Folger Depo. at 73-74.)  Readership of opposer's magazine is approximately 125,000 to 150,000 per issue, and opposer had 500,000 visitors to its baseballamerica.com website in the typical month of June 2003.  (Folger Depo. at 48-49.)  Opposer selects the rosters and publishes the official game program for the All-Star Futures Game and the Legends and Celebrity Softball Game, which are played as part of the festivities surrounding the Major League All-Star Game each summer. (Folger Depo. at 49-50 and 88-89, and Exh. No. 29.)  Based on this evidence, we find that opposer's BASEBALL AMERICA mark is a well-known and indeed famous mark in the baseball

13

field, a fact which weighs heavily in favor of a finding of likelihood of confusion.  *See Bose Corp. v. QSC Audio Products Inc*., 293 F.3d 1367, 63 USPQ2d 1303, 1309 (Fed. Cir. 2002); *Recot Inc. v. M.C. Becton*, 214 F.3d 1322, 54 USPQ2d 1894 (Fed. Cir. 2000); and *Kenner Parker Toys, Inc. v. Rose Art Industries, Inc.*, 963 F.2d 350, 22 USPQ2d 1453 (Fed. Cir. 1992).

After considering all of the evidence of record as it pertains to the relevant *du Pont* evidentiary factors, and for the reasons discussed above, we conclude that applicant's mark, when used on and in connection with applicant's goods and services, so resembles opposer's mark, previously used and/or registered for identical or similar goods and services, that confusion as to source, sponsorship or affiliation is likely to result.  To the extent that any doubts as to this conclusion might exist (and we have none), such doubts must be resolved against applicant.  *See In re Hyper Shoppes (Ohio) Inc.*, 837 F.2d 840, 6 USPQ2d 1025 (Fed. Cir. 1988); and *In re Martin's Famous Pastry Shoppe, Inc.*, 748 F.2d 1565, 223 USPQ 1289 (Fed. Cir. 1984).

**Decision**:  Each of these consolidated oppositions (Opposition Nos. 91120166 and 91120978) is sustained.