THIS OPINION
IS A PRECEDENT OF THE
T.T.A.B.

Mailed:  3/14/08

**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

In re La Peregrina Limited

_____

Serial No. 78676199

_____

Thomas T. Chan and Lisa A. Karczewski of Chan Law Group for
La Peregrina Limited.

Evelyn Bradley, Trademark Examining Attorney, Law Office
105 (Thomas G. Howell, Managing Attorney).

_____

Before Seeherman, Quinn and Walters, Administrative
Trademark Judges.

Opinion by Quinn, Administrative Trademark Judge:

La Peregrina Limited filed an application to register
the mark LA PEREGRINA for "jewellery [sic]; precious
stones; pearls in loose pieces, pairs and strands; pearl
jewellery."[1]  The application includes the following
statement:  "The English translation of the wording 'LA
PEREGRINA' is 'THE PILGRIM.'"

_____

[1] Application Serial No. 78676199, filed July 22, 2005, alleging
first use anywhere on September 21, 1999, and first use in
commerce on September 26, 1999.

The trademark examining attorney refused registration under Section 2(d) of the Trademark Act, 15 U.S.C. §1052(d), on the ground that applicant's mark, when applied to applicant's goods, so resembles the previously registered mark PILGRIM for "jewelry" (in International Class 14) and "brooches and hair clips" (in International Class 26)[2] as to be likely to cause confusion.

When the refusal was made final, applicant appealed. Applicant and the examining attorney filed briefs.

The examining attorney maintains that the marks are essentially the same in that "la peregrina," a Spanish term meaning "the pilgrim," is the foreign equivalent of the cited mark. The examining attorney points to the sizeable segment of the American population that speaks Spanish, relying on evidence indicating that Spanish is the second most common language in the United States after English. Thus, the examining attorney contends, the average consumer in this country would be likely to translate the foreign term into its English equivalent. As to the goods, the examining attorney finds that they are related and, in connection therewith, has introduced third-party registrations. In further support of the refusal, the

---

[2] Registration No. 2571488, issued May 21, 2002; Section 8 affidavit accepted, Section 15 affidavit acknowledged.

examining attorney submitted an on-line dictionary listing for "la peregrina," an excerpt from applicant's website, an excerpt from Wikipedia, and excerpts from various third-party websites.

Applicant's principal argument in urging reversal of the refusal is that the marks create different commercial impressions, and that the doctrine of foreign equivalents does not apply in this case because an American purchaser is unlikely to translate the foreign mark, but rather "will simply accept it as it is." Applicant contends that many Spanish-speaking individuals in this country are not fluent in English, and that even those bilingual in English-Spanish would not stop and translate applicant's mark into its English equivalent. In this connection, applicant introduced the declarations of four bilingual individuals. With respect to the goods, applicant contends that they are not related, pointing to differences between the respective jewelry as gleaned from registrant's website. Applicant further argues that purchase of the involved goods involves careful consideration by sophisticated individuals. In additional support of its position applicant submitted an excerpt from Wikipedia, and excerpts from third-party websites.

Our determination of the issue of likelihood of confusion is based on an analysis of all of the probative facts in evidence that are relevant to the factors set forth in *In re E. I. du Pont de Nemours & Co*., 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). *See also In re Majestic Distilling Co., Inc*., 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003). In any likelihood of confusion analysis, however, two key considerations are the similarities between the marks and the similarities between the goods and/or services. *See Federated Foods, Inc. v. Fort Howard Paper Co*., 544 F.2d 1098, 192 USPQ 24 (CCPA 1976).

We first turn to a consideration of the goods. It is well settled that the question of likelihood of confusion must be determined based on an analysis of the goods recited in applicant's application vis-à-vis the goods identified in the cited registration. *In re Shell Oil Co.*, 992 F.2d 1204, 26 USPQ2d 1687, 1690 n.4 (Fed. Cir. 1993); and *Canadian Imperial Bank v. Wells Fargo Bank*, 811 F.2d 1490, 1 USPQ2d 1783 (Fed. Cir. 1992). Where the goods in the application at issue and/or in the cited registration are broadly identified as to their nature and type (as in the case of "jewelry"), such that there is an absence of any restrictions as to the channels of trade and no limitation as to the classes of purchasers, it is presumed

4

that in scope the identification of goods encompasses not only all the goods of the nature and type described therein, but that the identified goods are offered in all channels of trade which would be normal therefor, and that they would be purchased by all potential buyers thereof. *In re Elbaum*, 211 USPQ 639, 640 (TTAB 1981). Likelihood of confusion may be found based on any item that comes within the identification of goods in the involved application or registration. *Tuxedo Monopoly, Inc. v. General Mills Fun Group*, 648 F.2d 1335, 209 USPQ 986, 988 (CCPA 1981).

Applicant's identification of goods reads "jewellery; precious stones; pearls in loose pieces, pairs and strands; pearl jewellery" and registrant's identification of goods includes "jewelry." At the very least, applicant's identified "jewellery" and registrant's identified "jewelry" are, for purposes of the likelihood of confusion analysis, legally identical. Further, applicant's precious stones and loose pearls are closely related to registrant's identified "jewelry." We must presume that the goods are sold in the same trade channels to the same classes of purchasers, including ordinary consumers.

Applicant asserts that registrant's goods are "primarily made of tin or zinc alloyed with copper, and then plated with either enamel, 22 carat gold or sterling

5

silver," whereas applicant's goods are "primarily pearl jewelry and precious stones in combination with such pearl jewelry, which are not made of tin or zinc and alloyed and plated." Further, applicant states that registrant's goods "have a distinct creative twist" with "youthful, trendy jewelry designs" while applicant's goods are "very classic and sophisticated." However, given that applicant's and registrant's goods are identified as "jewelry," applicant's distinctions between the goods are irrelevant in our analysis. Further, applicant's statement that "cultural differences and influences should be taken into consideration when analyzing the relatedness of goods" is not supported by case law; on the contrary, it is well established, as noted above, that it is the identification of goods that controls, not what extrinsic evidence may show about the specific nature of the goods. Similarly, applicant's reliance on registrant's website in an attempt to restrict the scope of registrant's goods is to no avail. An applicant may not restrict the scope of the goods covered in the cited registration by argument or extrinsic evidence. *In re Bercut-Vandervoort & Co.*, 229 USPQ 763, 764 (TTAB 1986).

The very identification of goods in the application and registration would require us to find that applicant's

"jewellery" and registrant's "jewelry" are legally identical. In addition, the examining attorney has introduced several use-based third-party registrations showing that each registrant adopted a single mark for goods of the type involved herein, namely jewelry, pearls and precious stones. Third-party registrations that individually cover different items and that are based on use in commerce serve to suggest that the listed goods and/or services are of a type that may emanate from a single source. *See In re Albert Trostel & Sons Co.*, 29 USPQ2d 1783 (TTAB 1993); and *In re Mucky Duck Mustard Co. Inc.*, 6 USPQ2d 1467 (TTAB 1988). Thus, to the extent that the goods are not identical, they are otherwise closely related.

The identity, at least in part, between applicant's and registrant's goods is a factor that weighs heavily against applicant in the likelihood of confusion analysis.

As to the marks, we examine the similarities and dissimilarities of the marks in their appearance, sound, meaning, and commercial impression. *Palm Bay Imports Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689, 1692 (Fed. Cir. 2005). Where, as in the present case, the marks appear in connection with, at least in part, legally identical goods, the degree of

similarity between the marks that is necessary to support a finding of likely confusion declines. *Century 21 Real Estate Corp. v. Century Life of America*, 970 F.2d 874, 23 USPQ2d 1698 (Fed. Cir. 1992).

The marks LA PEREGRINA and PILGRIM are different in sound and appearance.

With respect to meaning, the Spanish term "la peregrina" is translated into English as "the pilgrim." *See* Cassell's Spanish-English English-Spanish Dictionary (1978).[3]

Under the doctrine of foreign equivalents, foreign words from common, modern languages are translated into English to determine similarity of connotation with English words in a likelihood of confusion analysis. *See Palm Bay Import, Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 73 USPQ2d at 1696. The doctrine is applied when it is likely that "the ordinary American purchaser would 'stop and translate [the term] into its English equivalent." *Id., quoting In re Pan Tex Hotel Corp.*, 190 USPQ 109, 110 (TTAB 1976). *See generally* J.T. McCarthy, McCarthy on Trademarks and Unfair Competition, § 23:36 (4th ed. 2006).

---

[3] In addition to the translation relied upon by the examining attorney (www.babelfish.altavista.com), we take judicial notice of this translation.

The Board has determined that the "ordinary American purchaser" in a case involving a foreign language mark refers to the ordinary American purchaser who is knowledgeable in English as well as the pertinent foreign language. *In re Thomas*, 79 USPQ2d 1021, 1025 (TTAB 2006).

We presume that a word in one of the common, modern languages of the world will be spoken or understood by an appreciable number of U.S. consumers for the goods at issue. In the present case, there is no question that Spanish is a common, modern language. According to the evidence submitted by the examining attorney, Spanish is the second most common language in the United States after English, with estimates of up to 30 million Spanish-speaking people in this country. Applicant quibbles with some of the figures introduced by the examining attorney, with applicant asserting that much of the Spanish speaking population in this country is not fluent in English (according to applicant "only" 14-15 million individuals can be accurately described as bilingual). Applicant also asserts that Spanish remains highly localized (primarily in California and Texas) rather than being spoken uniformly throughout the United States; and that an overwhelming majority of Americans are not bilingual in English and Spanish. Notwithstanding these points, it is clear that,

by any standard, the Spanish language is spoken or understood by an appreciable number of U.S. consumers who also speak or understand English.

Thus, the question becomes whether those who understand Spanish "will stop and translate the word into its English equivalent." *Palm Bay Import, Inc.*, 73 USPQ2d at 1696. This question in turn necessarily depends upon the particular facts and circumstances of the case.

The term "la peregrina" and its translation, "the pilgrim," are equivalent in meaning. The dictionary evidence shows that "pilgrim" is an exact translation of "peregrina." There is no dictionary evidence to the contrary. *Compare, e.g., In re Sarkli, Ltd.*, 721 F.2d 353, 220 USPQ 111 (Fed. Cir. 1983); and *In re Pan Tex Hotel Corp.*, 190 USPQ 109 (TTAB 1976). There is also no question that the translated meaning of LA PEREGRINA is not obscure.

There is no compelling evidence in the record to establish that the mark would not be translated because of marketplace circumstances or the commercial setting in which the mark is used. In saying this, we have considered, of course, the declarations of the four individuals relied upon by applicant.

Applicant submitted the declarations of four individuals in an attempt to rebut the dictionary evidence

showing that "la peregrina" means "pilgrim."  These

declarations are not form declarations (although two are

identical in their salient portions).  The first is from

Brittmarie Janson Perez, who is bilingual in English and

Spanish and who was educated in Spanish schools.  Ms.

Perez, who holds a doctorate in anthropology, states that

she has written two books published in Spanish, a third in

English, and has authored many articles in Spanish.  For

fourteen years Ms. Perez worked for the Foreign Broadcast

Information Service, an entity affiliated with the Central

Intelligence Agency.  Her job of "high responsibility"

entailed translating news from Spain and Latin American

countries into English for the U.S. Government.  Ms. Perez

states the following:

> When encountering the LA PEREGRINA mark
> in the market place, I would not
> translate the LA PEREGRINA mark as THE
> PILGRIM.  Most educated people know
> that La Peregrina is the name of a very
> famous and unique pearl discovered in
> Panama, and the English word PILGRIM is
> closely associated with the Europeans
> who settled in the United States during
> the 17th century.  In fact, the
> customary translation of the pearl La
> Peregrina in English is "The Wanderer."
> Thus, when encountering LA PEREGRINA
> mark in the market place, I would
> simply accept the LA PEREGRINA mark as
> it is with respect to Applicant's goods
> for jewelry, precious stones, pearls
> and pearl jewelry.

11

A second individual, Desiree Pedreschi Hollingsworth, states that she has been bilingual in English and Spanish for 30 years.  She further states as follows:

> I would not stop and translate the LA PEREGRINA mark into its English equivalent, THE PILGRIM, when encountering the LA PEREGRINA mark in the marketplace.  Rather, I would simply accept the mark as it is with respect to Applicant's goods for jewelry, precious stones, pearls and pearl jewelry.  Furthermore, when I first encountered the name La Peregrina, Ltd. on September 19, 2006, I immediately thought that it is the perfect name for a pearl jewelry business because of the internationally famous pearl with that name.  If asked what is the definition of "la peregrina," I would answer "a warbler, a wandering female or a wild concept." I question if "pilgrim" is the best translation for the word "peregrine" [sic] because I think a pilgrim is more like an outsider who settles in a new place.

Two other individuals, Nancy Valenzuela and Mary Isabel Zachovay, indicated that they have been bilingual in English and Spanish for 20 years, and both made the identical statement:

> I would not stop and translate the LA PEREGRINA mark into its English equivalent, THE PILGRIM, when encountering the LA PEREGRINA mark in the marketplace.  Rather, I would simply accept the mark as it is with respect to Applicant's goods for jewelry, precious stones, pearls and pearl jewelry.

12

The declarations do not persuade us that consumers would not translate "la peregrina" as "the pilgrim," but would simply accept the term as it is.  Given Ms. Perez's background, she hardly can be characterized as a typical or ordinary consumer.  The identification of applicant's "jewelry" in the application is not limited by price, so we must assume that the jewelry includes inexpensive items that consumers would purchase with nothing more than ordinary care.  These consumers likely are not as knowledgeable as Ms. Perez about language or famous gems.

We note Ms. Perez's statement that "la peregrina" would be translated to "the wanderer," and Ms. Hollingsworth's statement that the term "la peregrina" would be translated as "a warbler, a wandering female or a wild concept."  These statements lack probative value inasmuch as they clearly are undermined by applicant's own translation of "la peregrina" as "the pilgrim."  Applicant has not disputed the exactness of the translation it has offered.  (Response, June 12, 2006).

We further note Ms. Perez's statement, as well as a similar one by Ms. Hollingsworth, about a pearl named "La Peregrina."  Ms. Perez claims that "La Peregrina" is the "name of a very famous and unique pearl discovered in

Panama," and Ms. Hollingsworth refers to "the internationally famous pearl with that name." We agree that if the relevant purchasing public viewed "La Peregrina" as the name of a pearl, this would be a situation where purchasers would not translate the name (in the way that the public would not translate the woman's name "Blanche" as "white," but would view "Blanche" as a name in its own right). However, the evidence of record is simply insufficient for us to conclude that consumers in this country are aware of the "La Peregrina" pearl. Ms. Perez herself limits the knowledge of the pearl to "most educated people," a far more exclusive purchaser class than the one comprising ordinary consumers. Aside from the statements in the two declarations, there is one mention of the "La Peregrina" pearl on a Smithsonian Institution webpage that indicates the pearl was part of a 2005 exhibit. There is no indication in the record, however, about any publicity for that exhibit, or the number of people who may have viewed it, or anything from which we could conclude that consumers, especially ordinary ones, will know about the existence of a pearl named "La Peregrina." The evidence of record is simply insufficient for us to conclude that consumers in this country would be aware of the "La Peregrina" pearl, and therefore that they

14

would view "La Peregrina" as a name in its own right.  As a result, we find that the consumers of applicant's goods would translate "la peregrina" as "the pilgrim."

The declarations of Ms. Valenzuela and Ms. Zachovay likewise are not persuasive.  The declarants offer nothing more than a conclusory statement; while they state that they would not stop and translate the Spanish term into its English equivalent, no reason is given why this is so.

In sum, the declarations are insufficient to overcome the clear dictionary evidence bearing on the foreign equivalence of "peregrina" and "pilgrim."  We are not willing to take the opinions of only four individuals and extrapolate their views to the relevant ordinary American purchasers.

Applicant argues that purchasers of the goods are sophisticated.  However, as indicated above, the involved identifications of goods are not limited, so we must presume that the classes of purchasers include ordinary consumers as well.

In view of the above, we find that LA PEREGRINA and PILGRIM are foreign equivalents and, thus, the marks are identical in meaning.  This factor outweighs the differences in appearance and pronunciation.  Applying the doctrine of foreign equivalents, we find that confusion is

likely to occur in the marketplace.  We conclude that bilingual (English and Spanish) consumers familiar with registrant's jewelry sold under the mark PILGRIM would be likely to believe, upon encountering the Spanish equivalent LA PEREGRINA for jewelry, precious stones and loose pearls, that the jewelry originated with or is somehow associated with or sponsored by the same entity.

Lastly, to the extent that any of the points raised by applicant raise a doubt about likelihood of confusion, that doubt is required to be resolved in favor of the prior registrant.  *In re Hyper Shoppes (Ohio), Inc*., 837 F.2d 840, 6 USPQ2d 1025 (Fed. Cir. 1988); and *In re Martin's Famous Pastry Shoppe, Inc*., 748 F.2d 1565, 223 USPQ 1289 (Fed. Cir. 1984).

**Decision:**  The refusal to register is affirmed.