THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
Jan. 23, 2007

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

**Trademark Trial and Appeal Board**

_____

Barbara's Bakery, Inc.
v.
Barbara Landesman

_____

Opposition No. 91157982
to application Serial No. 76308993
filed on September 5, 2001

_____

E. Lynn Perry of Perry IP Group for Barbara's Bakery, Inc.

Gerald K. Crow for Barbara Landesman.

_____

Before Seeherman, Grendel and Drost, Administrative
Trademark Judges.

Opinion by Grendel, Administrative Trademark Judge:


**INTRODUCTION**

Barbara Landesman, applicant herein, seeks registration

on the Principal Register of the mark **BARB'S BUNS BAKERY,**

**INC.** (in standard character form; BUNS BAKERY, INC.

disclaimed) for goods identified in the application, as

amended, as "printed recipes sold as a component of food packaging; recipe books; newsletters containing recipes for fat-free and low-fat foods; newsletters containing recipes for healthy lifestyles and information about baking techniques," in Class 16.[1] The application is based on use in commerce under Trademark Act Section 1(a), 15 U.S.C. §1051(a). July 1994 is alleged in the application to be the date of first use of the mark anywhere, and September 1994 is alleged to be the date of first use of the mark in commerce.

Barbara's Bakery, Inc., opposer herein, has opposed registration of applicant's mark. In the amended notice of opposition, opposer alleges as one ground for opposition "that Applicant has not actually used Applicant's Mark in connection with all of the goods identified in Applicant's Application." Opposer also has asserted a claim under Trademark Act Section 2(d), 15 U.S.C. §1052(d), alleging that it is the prior user (since 1972) of the marks BARBARA'S and BARBARA'S BAKERY in connection with food products including baked goods; that it is the owner of

---

[1] Serial No. 76308993, filed September 5, 2001. The application includes the following consent statement: "The name 'BARB' in the mark identifies the applicant, a living individual, whose consent is implicit in and is of record by virtue of the applicant's personal signature on the application."

Registration No. 1446650, which is of the mark depicted below



for goods identified in the registration as "processed foods, namely potato chips, mashed potatoes," in Class 29, and "foods, namely bakery goods, corn and tortilla chips, bread sticks, pretzels, breakfast cereals," in Class 30;[2] and that applicant's mark, as applied to applicant's goods, so resembles opposer's previously-used and registered marks as to be likely to cause confusion, to cause mistake, or to deceive.[3]  Also, although not pleaded by opposer, opposer has presented evidence at trial showing that it uses its marks on printed newsletters, printed recipes, and recipes sold as a component of food packaging.  In view of this evidence, and applicant's failure to object thereto, we deem this issue to have been tried by the implied consent of the parties.  We deem the pleadings to be amended to include

---

[2] Issued July 7, 1987.  Affidavits under Sections 8 and 15 accepted and acknowledged.

[3] The amended notice of opposition also includes a Section 43(c) dilution claim, but opposer presented no arguments in support of that claim in its brief.  We therefore deem opposer to have waived its pleaded dilution ground, and we have given it no consideration.

opposer's claim of common law rights in its marks as applied

to these additional goods, and to include applicant's denial

of such claim. *See* Fed. R. Civ. P. 15(b), made applicable

to this proceeding by Trademark Rule 2.107(a), 37 C.F.R.

§2.107(a).[4]  Finally, opposer also alleges that it is the

owner of intent-to-use application Serial No. 76416819,

filed on June 4, 2002, by which it seeks registration of the

mark BARBARA'S BAKERY and design for various food items in

Classes 29 and 30,[5] and that applicant's prior-filed

---

[4] In pertinent part, Fed. R. Civ. P. 15(b) provides as follows:

> **(b) Amendments to Conform to the Evidence**.
> When issues not raised by the pleadings are tried by
> express or implied consent of the parties, they shall
> be treated in all respects as if they had been raised
> in the pleadings.  Such amendment of the pleadings as
> may be necessary to cause them to conform to the
> evidence and to raise these issues may be made upon
> motion of any party at any time, even after judgment;
> but failure so to amend does not affect the result of
> the trial of these issues.

TBMP §507.03(b) provides, in pertinent part, that "[i]mplied
consent to the trial of an unpleaded issue can be found only
where the nonoffering party (1) raised no objection to the
introduction of evidence on the issue, and (2) was fairly
apprised that the evidence was being offered in support of the
issue."  We find that both of these conditions have been
satisfied in this case.

[5] The mark opposer seeks to register in its pending application
is depicted below:



application (involved herein) has been cited as a potential Section 2(d) bar to registration of opposer's mark.

Applicant answered the amended notice of opposition by denying the salient allegations thereof, except that applicant admits that her involved application has been cited as a potential Section 2(d) bar to registration in opposer's later-filed application.

The evidence of record includes the file of applicant's involved application; the pleadings herein; opposer's notices of reliance on applicant's responses to certain of opposer's interrogatories and requests for admissions; the testimony declarations of opposer's witnesses Lorraine Hood, William Gronlund, Lynn Golshan and David Gauger, and Exhibit Nos. 1-47 thereto, all submitted pursuant to stipulation under Trademark Rule 2.123(b); and applicant's testimony declarations of Barbara Landesman and Peter Cuneo, and Exhibit Nos. 1-18 thereto, also submitted pursuant to stipulation under Rule 2.123(b). Opposer filed a brief on the case, and applicant filed a responsive brief.

---

for goods identified in the application as "processed organic foods, namely cookies, crackers, breakfast cereals, and cereal-based bars," in Class 29, and "food products, namely, cereal-derived food bars, granola-based snack bars, cookies, breakfast cereals, puffed corn snacks, potato chips, dehydrated mashed potatoes, nutrient dense snack bars and crackers," in Class 30. Opposer has disclaimed BAKERY apart from the mark as shown. The application currently is suspended pending outcome of this opposition proceeding.

**STANDING**

We find that opposer has established its standing to oppose registration of applicant's mark. In particular, opposer has properly made its pleaded registration of record, and opposer's likelihood of confusion claim is not frivolous. *See Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842 (Fed. Cir. 2000); *Lipton Industries, Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185 (CCPA 1982).

**OPPOSER'S SECTION 2(d) CLAIM**

We turn first to opposer's Section 2(d) ground of opposition. To prevail on such ground, opposer must prove ownership of a registration and/or priority of use, and likelihood of confusion.

**Priority**

We find, first, that because opposer's pleaded Registration No. 1446650 has been properly made of record, Section 2(d) priority is not an issue in this case as to the mark (BARBARA'S and design; see *supra*) and the goods ("processed foods, namely potato chips, mashed potatoes," in Class 29, and "foods, namely bakery goods, corn and tortilla chips, bread sticks, pretzels, breakfast cereals," in Class 30) covered by said registration. *See King Candy Co. v.*

*Eunice King's Kitchen, Inc.*, 496 F.2d 1400, 182 USPQ 108 (CCPA 1974). We also find, based on the uncontroverted evidence of record, that opposer has actual priority of use on such food products, having used the marks BARBARA'S and BARBARA'S BAKERY continuously since the company's founding in 1971, and specifically on cookies since 1973, crackers since 1975, breakfast cereals since 1978, and chips and snack bars since 1988. (Hood Decl. ¶¶ 5-8.) The record also shows that opposer has used its marks on printed newsletters since at least 1994 and on printed recipes distributed to consumers since at least 1987. (Hood Decl. ¶¶ 8-9; Exhibits 3-5.) Finally, the record also shows that the packaging for opposer's food products includes printed recipes as components of the packaging. (Hood Decl. ¶9; Exhibit 21.) Opposer's use of its marks on all of these goods predates applicant's application filing date or any date of actual use established by applicant.

In short, priority is not at issue with respect to the mark and goods covered by opposer's pleaded registration, and opposer in any event has established prior use of its marks on such goods as well as on certain of the goods identified in applicant's application, i.e., newsletters and printed recipes. Opposer therefore has proven this element of its Section 2(d) claim.

**Likelihood of Confusion**

We turn next to the second element of opposer's Section 2(d) claim, likelihood of confusion. Our likelihood of confusion determination under Section 2(d) is based on an analysis of all of the facts in evidence that are relevant to the factors bearing on the likelihood of confusion issue (the *du Pont* factors). *See In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). *See also Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689 (Fed. Cir. 2005); *In re Majestic Distilling Co.,* 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003); *In re Dixie Restaurants Inc.*, 105 F.3d 1405, 41 USPQ2d 1531 (Fed. Cir. 1997).

We turn first to the second *du Pont* factor, i.e., the similarity or dissimilarity of the parties' goods. It is settled that it is not necessary that the respective goods be identical or even competitive in order to support a finding of likelihood of confusion. That is, the issue is not whether consumers would confuse the goods themselves, but rather whether they would be confused as to the source of the goods. It is sufficient that the goods be related in some manner, or that the circumstances surrounding their use be such that they would be likely to be encountered by the same persons in situations that would give rise, because of the marks used thereon, to a mistaken belief that they

8

originate from or are in some way associated with the same source or that there is an association or connection between the sources of the respective goods. *See In re Martin's Famous Pastry Shoppe, Inc*., 748 F.2d 1565, 223 USPQ 1289 (Fed. Cir. 1984); *In re Melville Corp*., 18 USPQ2d 1386 (TTAB 1991); and *In re International Telephone & Telegraph Corp*., 197 USPQ 910 (TTAB 1978).

The evidence of record establishes that opposer uses its marks on newsletters, on printed recipes, and on recipes included as part of the packaging for its prepared food products such as crackers.[6] (Hood Decl. at ¶¶ 8-9, Exh. Nos. 3, 4 and 21.) These goods are legally identical to the various "newsletters" and to the "printed recipes sold as a component of food packaging" identified in applicant's application (such "food packaging" being so broadly worded that it legally encompasses packaging for all types of food products, including opposer's types of food products), and the second *du Pont* factor therefore clearly weighs in opposer's favor as to those goods. We also find that the printed goods identified in applicant's application are similar and related to opposer's prepared food products, for purposes of the second *du Pont* factor. In this regard, Ms. Hood testified that it is common in the prepared foods

---

[6] As discussed above at footnote 4, we have deemed the pleadings to be amended to include opposer's claim of common law rights in its marks as to these items.

industry for manufacturers to include recipes on the packaging of their products (Hood Decl. at ¶10), an assertion that is borne out by the examples of third-party packaging submitted as opposer's Exh. No. 6. Because applicant's "printed recipes sold as a component of food packaging" must be deemed to include recipes on packaging for foods which feature, as ingredients, food items like opposer's such as bakery products, corn and tortilla chips, or breakfast cereals, consumers would be likely to associate such recipes with opposer's products if they were offered under confusingly similar marks.

Based on this evidence, we find that applicant's goods, as identified in the application, are legally identical to the printed goods on which opposer has proven prior use of its marks, and that they are similar and commercially related to opposer's food products. The second *du Pont* factor therefore weighs in opposer's favor in our likelihood of confusion analysis.

Under the third *du Pont* factor (similarity or dissimilarity of trade channels), we find that applicant's goods as identified in the application are or can be marketed in the same trade channels and to the same classes of purchasers as opposer's goods. This clearly is the case with respect to those goods of applicant's which are legally identical to opposer's goods, i.e., newsletters and recipes

printed on food packaging.  Moreover, there are no trade channel or class of purchaser limitations in applicant's identification of goods, so we must presume that applicant's goods are or would be marketed in all normal trade channels and to all normal classes of purchasers for such goods.  *See In re Elbaum*, 211 USPQ 639 (TTAB 1981).  Such trade channels would include all normal retail trade channels for health food products and printed materials related thereto, and the classes of purchasers would include ordinary consumers, including consumers of health food products and information. Any asserted limitations in applicant's current or actual trade channels (i.e., mail order) are immaterial, given the absence of such limitations in applicant's identification of goods.  We conclude that the third *du Pont* factor accordingly weighs in opposer's favor in our likelihood of confusion analysis.

The fifth *du Pont* factor requires us to consider evidence of the fame of opposer's marks.  Opposer claims that its marks are famous in the natural foods marketplace and therefore deserving of a broad scope of protection.  The evidence of record establishes that opposer's products are sold nationwide in 20,000 stores, including 10,000 mainstream grocery stores and also in "almost every single natural foods store in the country."  (Hood Decl. ¶¶ 15-17.) Opposer has had sales of $2 billion over the past ten years

(Hood Decl. ¶ 24), and advertising expenditures now reaching $1 million per year, with over $6 million spent in the last eleven years (Hood Decl. ¶ 25). Opposer uses its mark on its website, which had 367,000 visitors in March 2004. (Hood Decl. ¶ 16; Exh. 9.) Opposer asserts that the organic and health foods sector is one of the fastest growing sectors in the prepared foods market (Hood Decl. ¶ 22; Gauger Decl. ¶ 5; Exh. 28), and that "Barbara's Bakery is one of the largest brands across all health food categories." (Hood Decl. ¶ 40.) "As an example of Barbara's longterm success, BARBARA'S shredded biscuit cereals had a 60% market share in its category in both natural foods and mainstream markets in 2003 and was first in its category in 1999, 2002 and 2003." (Hood Decl. ¶ 42.)

Based on this evidence, which applicant does not dispute, we find that, although not rising to the level of fame which has been found to exist for other consumer products (compare *Recot, Inc. v. M.C. Becton*, 214 F.3d 1322, 54 USPQ2d 1894 (Fed. Cir. 2000)(FRITO-LAY), and *Kenner Parker Toys Inc. v. Rose Art Industries, Inc.*, 963 F.2d 350, 22 USPQ2d 1453 (Fed. Cir. 1992)(PLAY-DOH)), opposer's marks BARBARA'S and BARBARA'S BAKERY have achieved a degree of renown, at least in the natural foods marketplace. This evidence is sufficient to establish that opposer's mark is a strong mark. We therefore treat this *du Pont* factor as

12

weighing in opposer's favor in our likelihood of confusion analysis. *See, e.g., Recot, Inc. v. M.C. Becton, supra*.

Under the seventh and eighth *du Pont* factors, we find that there is no evidence of actual confusion, but we also find that such absence of evidence is clearly due to the minimal scope of applicant's actual use of her mark in the marketplace. In the absence of a significant opportunity for actual confusion to have occurred, the absence of actual confusion is of little probative value in this case. *See Gillette Canada Inc. v. Ranir Corp.*, 23 USPQ2d 1768 (TTAB 1992).

We turn finally to the first *du Pont* factor, which requires us to determine the similarity or dissimilarity of the parties' marks when viewed in their entireties in terms of appearance, sound, connotation and overall commercial impression. *Palm Bay Imports, Inc., supra*. The test, under the first *du Pont* factor, is not whether the marks can be distinguished when subjected to a side-by-side comparison, but rather whether the marks are sufficiently similar in terms of their overall commercial impression that confusion as to the source of the goods offered under the respective marks is likely to result. The focus is on the recollection of the average purchaser, who normally retains a general rather than a specific impression of trademarks. *See Sealed Air Corp. v. Scott Paper Co.*, 190 USPQ 106 (TTAB 1975).

Furthermore, although the marks at issue must be considered in their entireties, it is well-settled that one feature of a mark may be more significant than another, and it is not improper to give more weight to this dominant feature in determining the commercial impression created by the mark. *See In re Chatam International Inc.,* 380 F.3d 1340, 71 USPQ2d 1944 (Fed. Cir. 2004); *In re National Data Corp.*, 753 F.2d 1056, 224 USPQ 749 (Fed. Cir. 1985). Finally, in cases such as this, where the applicant's goods are identical (in part) to the opposer's goods, the degree of similarity between the marks which is required to support a finding of likelihood of confusion is less than it would be if the goods were not identical. *Century 21 Real Estate Corp. v. Century Life of America,* 970 F.2d 874, 23 USPQ2d 1698 (Fed. Cir. 1992).

Applying these principles in the present case, we find, first, that the dominant feature in the commercial impression created by applicant's mark is the possessive proper noun BARB'S. We do not disregard BUNS BAKERY, INC., but we find that this descriptive or generic (and disclaimed) matter is entitled to less weight in our comparison of the respective marks than is the arbitrary designation BARB'S. *See In re Chatam International Inc., supra; In re National Data Corp., supra.* We likewise find that the dominant feature in the commercial impression

created by opposer's mark is the name BARBARA'S.  This name clearly contributes more to the source-indicating significance of opposer's mark than does the design element in the registered mark or the generic word BAKERY in the unregistered mark.

In terms of appearance and sound, we find that the marks are dissimilar to the extent that applicant's mark uses the name BARB'S instead of BARBARA'S, and includes the words BUNS BAKERY, INC.  However, the marks look and sound similar to the extent that they both begin with BARB.  Also, opposer's BARBARA'S BAKERY mark includes the word BAKERY, as does applicant's mark.  In terms of connotation and overall commercial impression, we find that the marks are similar because both applicant's mark and opposer's marks connote and create the impression of a bakery owned or operated by a person named BARB or BARBARA.  There can be no dispute that BARB is a common nickname or shortened version of BARBARA. Both BARB and BARBARA in the respective marks are presented in the possessive case, i.e., BARB'S and BARBARA'S. Applicant has presented evidence that, in adopting her mark, applicant intended for BARB'S BUNS to be a playful reference to applicant's posterior, i.e., her "buns of steel."  (Cuneo Decl. at page 2.)  However, given the obvious descriptive significance of BUNS as applied to bakery products and related printed matter, we find that any double entendre

15

significance of BARB'S BUNS is outweighed by the plain meaning of the words in the mark, i.e., that the bakery products with which applicant's printed materials are concerned include "buns."

Overall, we find that the similarity between the marks which arises from both marks' use of the arbitrary possessive BARBARA'S or BARB'S outweighs the points of dissimilarity between the marks. Viewed as a whole in terms of their source-indicating significance, we find that applicant's mark is similar, rather than dissimilar, to opposer's marks. This is especially so given that applicant's goods are, in part, identical to opposer's goods, thus reducing the degree of similarity between the marks which is required to support a finding of likelihood of confusion. *See Century 21 Real Estate Corp. v. Century Life of America, supra.* The first *du Pont* factor accordingly weighs in opposer's favor in our likelihood of confusion analysis.

Considering all of the evidence of record as it pertains to the *du Pont* factors, we conclude that a likelihood of confusion exists. Applicant's goods are identical in part and otherwise similar and related to opposer's goods, and the dominant feature of both parties' marks is the name BARB'S or BARBARA'S, presented in the possessive case. To the extent that any doubts might exist

16

as to the correctness of our likelihood of confusion conclusion, we resolve such doubts against applicant. *See Century 21 Real Estate Corp., supra; Ava Enterprises Inc. v. Audio Boss USA Inc.,* 77 USPQ2d 1783 (TTAB 2006); and *Baseball America Inc. v. Powerplay Sports Ltd.,* 71 USPQ2d 1844 (TTAB 2004).

## Section 2(d) - Conclusion

Having found that opposer has established both elements of its Section 2(d) claim, i.e., its priority (and/or ownership of its registration) and the existence of a likelihood of confusion, we sustain opposer's Section 2(d) ground of opposition.

## OPPOSER'S NON-USE CLAIM

We turn next to opposer's pleaded claim that registration to applicant should be refused because applicant has not used the applied-for mark on all of the goods identified in the application. In a use-based application filed under Trademark Act Section 1(a), 15 U.S.C. §1051(a), registration is allowed only as to goods upon which the mark is being used as of the application filing date, and an opposition will be sustained as to any of the identified goods as to which it is shown that no use

17

had been made as of the application filing date.[7]  Because

the evidence of record clearly establishes that applicant

was not using the mark on any of the goods identified in the

application as of the September 5, 2001 filing date of the

application, we sustain this ground of opposition.

In its responses to opposer's Requests for Admissions,

made of record by opposer via notice of reliance, applicant

admitted that "[n]either Applicant nor the Corporation has

used Applicant's Mark on 'printed recipes sold as a

component of food packaging'" (Request No. 20), and that

"[n]either applicant nor the Corporation had used

Applicant's Mark on 'printed recipes sold as a component of

food packaging' as of September 5, 2001," the filing date of

the application (Request No. 21).[8]  Based on this

uncontroverted evidence, we sustain opposer's "non-use"

ground of opposition as to the goods identified in the

application as "printed recipes sold as a component of food

packaging."

---

[7] Compare a fraud claim, which if proven would warrant sustaining
the opposition as to all of the goods identified in the
application, not just as to those goods which are the specific
subject of the fraud claim.  *See, e.g., Grand Canyon West Ranch,
LLC v. Hualapai Tribe*, 78 USPQ2d 1696 (TTAB 2006).  As discussed
infra, we need not and do not reach opposer's unpleaded fraud
claim in this case.

[8] "The Corporation" to which these requests refer is a New Mexico
corporation, Barb's Buns Bakery, Inc., owned by applicant.  See
applicant's answers to opposer's Requests for Admissions Nos. 60-
69.

The application's identification of goods also includes "recipe books," in Class 16.  However, there is no evidence in the record showing that applicant has ever used the mark on Class 16 "recipe books."  There is evidence that, prior to the application filing date (in 1998 and 1999), applicant made four sales, via her website, of an item called "Barb's Virtual Cookbook."  This item is described as follows on applicant's website:  "Barb's Virtual Cookbook - We email it to you!  And we have upgrades!  We include sweet and savory breads, salad dressings, recipes for entrée's [sic] along with techniques such as how to cook fish flawlessly every time!"  (Applicant's Exhibit No. 17).  We find that this "virtual cookbook," which is delivered to purchasers via email and does not appear to exist or ever to have been produced in printed form, cannot be deemed to be a Class 16 "recipe book."  We therefore sustain opposer's "non-use" ground of opposition as to the goods identified in the application as "recipe books."

Finally, the application's identification of goods includes "newsletters containing recipes for fat-free and low-fat foods," and "newsletters containing recipes for healthy lifestyles and information about baking techniques." The evidence of record establishes, however, that the only newsletters applicant has ever published were published between December 1994 and August 1995.  (Landesman Decl.

19

Page 4, ¶2, and applicant's Exhibit No. 5). Thus, applicant had ceased using the mark on newsletters in August 1995, more than six years prior to the filing date of applicant's use-based application. Based on this evidence, we find that applicant's mark was not in use in commerce on newsletters as of the filing date of the application. *See, e.g., Standard Knitting Ltd. v. Toyota Jidosha Kabushiki Kaisha*, 77 USPQ2d 1917 (TTAB 2006)(mark not used in commerce on goods, where last sale of goods had occurred many years prior to application filing date). We therefore sustain opposer's "non-use" ground of opposition as to the goods identified in the application as "newsletters containing recipes for fat-free and low-fat foods," and "newsletters containing recipes for healthy lifestyles and information about baking techniques."

In summary, we find that applicant was not using the mark as of the application filing date on any of the goods identified in the application, and we accordingly sustain opposer's "non-use" ground of opposition as to all of the identified goods. Trademark Act Section 1(a), 15 U.S.C. §1051(a).[9]

---

[9] We note that opposer, in its brief, also has asserted and argued abandonment and fraud claims in its brief. Because we are sustaining the opposition as to opposer's pleaded Section 2(d) and "non-use" grounds, we need not and do not reach opposer's unpleaded abandonment and fraud claims.

**UNPLEADED DEFENSES**

Having determined the non-use and Section 2(d) issues raised in the parties' pleadings, we now must address two unpleaded issues raised by applicant, i.e.: her assertion that opposer has deliberately misused the federal registration symbol ® (which we deem to be an assertion of the affirmative defense of unclean hands); and applicant's equitable estoppel defense. As discussed above (see *supra* at footnote 4), the Board will deem the pleadings to be amended to conform to the proof where an issue has been tried by the implied consent of the parties. See Fed. R. Civ. P. 15(b).

**Applicant's Unpleaded Unclean Hands Defense**

We turn first to applicant's unpleaded assertion that opposer has been deliberately misusing the federal registration symbol "®" on its packaging. In her supplemental testimonial declaration (at page 2), applicant asserts that due to this improper use of the registration symbol by opposer, "... I believe they do not deserve a trademark for this mark and have no standing to oppose the mark for BARB'S BUNS BAKERY." We deem these contentions to be applicant's attempt to assert a species of the equitable

21

affirmative defense of unclean hands.[10]  *See St. Louis Janitor Supply Co. v. Abso-Clean Chemical Co.*, 196 USPQ 778, 781 (TTAB 1977); *Dow Corning Corporation v. The Doric Corporation*, 192 USPQ 106, 112 (TTAB 1976); *The Reiser Company, Inc. v. Munsingwear, Inc.,* 128 USPQ 452 (TTAB 1961); and *Scovill Manufacturing Company v. Stocko Metallwarenfabriken Henkels und Sohn KG*, 191 USPQ 124 (Comm'r Pats. 1976).[11]

Review of the record reveals that, at trial, both parties presented testimony and other evidence on this issue, and that both parties presented arguments on the issue in their briefs.[12]  Accordingly, we deem this issue to

---

[10] Applicant's contention that opposer's alleged misuse of the registration symbol deprives opposer of "standing" to oppose registration of applicant's mark is not well-taken.  Applicant's contentions with regard to opposer's alleged misuse of the registration symbol clearly are in the nature of an affirmative defense, not a failure of proof as to a necessary element (standing) of opposer's case as plaintiff.  In any event and as discussed earlier in this opinion, opposer clearly has standing based on, inter alia, its ownership of a registration of the BARBARA'S (and design) mark and its non-frivolous likelihood of confusion claim.

[11] As a preliminary matter, we note that we need not and specifically do not reach the issue of whether unclean hands is available to applicant as an affirmative defense to opposer's nonuse claim, because even if it were, applicant has not proven it.

[12] We note that opposer, in the "Evidentiary Objections" section of its brief (at page 34) specifically objects to applicant's evidence on this issue on the ground that the issue is unpleaded.  However, we overrule the objection in view of our amendment of the pleadings under Rule 15(b).  We note in any event that opposer's objection does not take into account the fact that opposer itself presented rebuttal evidence on this specific issue at trial.

have been tried by the implied consent of the parties, and we therefore deem applicant's answer to be amended to include as an affirmative defense an allegation of unclean hands based on opposer's improper use of the federal registration symbol.  *See* Fed. R. Civ. P. 15(b).

The facts pertaining to this issue are as follows.  As noted above, opposer owns a registration (Reg. No. 1446650, issued on July 7, 1987) of the following mark:



Also as noted above (see footnote 5, *supra*), opposer filed an application on June 4, 2002 (Serial No. 76416819) seeking registration of the mark depicted below.



The drawing of the mark as originally filed in the pending BARBARA'S BAKERY application included the federal registration symbol "®" next to and immediately following the word BARBARA'S.

In the first Office action issued in opposer's pending application, the Trademark Examining Attorney required

opposer to submit a substitute drawing which deleted the "®" symbol, because "[t]his is informational matter only and must be deleted from the mark." The Trademark Examining Attorney went on to state: "Additionally, this symbol may not be used until a valid registration is obtained." In response to this Office action, opposer submitted a substitute drawing which deleted the "®" symbol from the mark.

In her initial testimonial declaration (at page 7), applicant asserted that notwithstanding opposer's submission of the substitute drawing and notwithstanding the Trademark Examining Attorney's express warning, opposer "has continued to use the registration mark, ®. Attached hereto as Exhibit 18 is a product package sold by Opposer and a purchase receipt dated April 23, 2005." On the 2005 product package depicted in Exhibit 18, there appears the BARBARA'S BAKERY mark which is the subject of opposer's pending application, and the mark includes the federal registration symbol "®" immediately next to the word BARBARA'S.[13] In her May 30,

---

[13] In her supplemental testimonial declaration, applicant asserted that she also purchased one of opposer's products on August 13, 2004, and that the package bears the BARBARA'S BAKERY mark along with the registration symbol. Although applicant asserts that a copy of the package and the receipt are attached to the supplemental declaration, no such attachment is of record. Given applicant's submission of evidence showing opposer's use of the registration symbol in its mark in 2005, this alleged 2004 instance of such use is cumulative and superfluous, and therefore the fact that it is not in the record of this proceeding has had no effect on our decision herein.

24

2005 supplemental testimonial declaration, applicant contends that "[a]s of this date, no valid registration for BARBARA'S BAKERY exists and I believe they are in violation of the USPTO order.  Further, the use of this logo is in direct contradiction to the revised drawing submitted to the USPTO" in response to the first Office action issued in opposer's pending application.

During its rebuttal testimony period, opposer submitted the June 21, 2005 rebuttal testimonial declaration of Lorraine Hood, opposer's Vice President of Sales & Marketing.  Ms. Hood declares as follows (in pertinent part):

> 3.  It has just been brought to my attention that the symbol ® has been improperly used in connection with Opposer's trademark BARBARA'S. The trademark status report prepared by other counsel shows that the word mark BARBARA'S is registered.  Therefore, I believed that the word mark was registered.  I now know that the mark referred to in the status report that is registered is for BARBARA'S plus a design.  I mistakenly believed, based on this report, that it was proper to use the symbol ® after the word BARBARA'S wherever it appeared.
>
> 4.  I was not informed that the Examining Attorney assigned to Barbara's application had objected to use of the symbol ® in connection with the drawing for that mark.
>
> 5.  I am taking steps to correct the misuse of the ® symbol in connection with the mark including the following steps: correcting the next printing of each set of applicable product packaging; correcting the website; and correcting future advertising where the mark appears.

25

6. Barbara's intent in using the ® symbol was certainly not to create the misimpression that Barbara's has a registered mark when it does not, nor was Barbara's intent to mislead the public.

7. Therefore, I do not believe that Barbara's has committed fraud upon the Trademark Office in the mistaken misuse of the ® symbol.

On this record, we find that applicant has failed to prove her unclean hands defense, i.e., that opposer's misuse of the federal registration symbol "®" constitutes unclean hands which bars opposer from the relief it seeks. We regard opposer's explanation regarding opposer's misuse of the registration symbol to be plausible and indeed credible. Opposer's ownership of a registration for the mark BARBARA'S (albeit in special form) could have led opposer to mistakenly assume, as Ms. Hood declares, that opposer was entitled to use the registration symbol next to the word BARBARA'S wherever it appears. *Cf. Dow Corning Corp. v. The Doric Corp., supra* (where opposer's registered mark was SILASTIC 732, opposer's use of registration symbol after the word SILASTIC instead of after the numeral 732 was technically improper, but not fraudulent "given opposer's belief that its significant and long standing trademark is the designation 'SILASTIC' and that the numeral '732' is akin to a grade or product designation adding little or no additional significance to the mark as a whole"); and *The Reiser Company, Inc. v. Munsingwear, Inc., supra* (opposer's

use of registration symbol next to VENIDA mark not fraudulent, where record shows that opposer at one time owned a (now-expired) registration of the mark for other goods, and where opposer's testimony clearly shows that opposer's misuse of registration symbol with the mark "was due to a misunderstanding on its part as to the status of said registration, and of its rights thereunder, rather than to any intent to deceive the public or the trade").

Ms. Hood's statement that she was unaware of the Trademark Examining Attorney's requirement for a substitute drawing is plausible, and it explains why opposer continued to use the symbol after the submission of a substitute drawing and after the Trademark Examining Attorney's warning against unauthorized use of the symbol. Ms. Hood's declaration also establishes that opposer, now that it is aware of the issue, is taking affirmative steps to eliminate opposer's misuse of the symbol, including "correcting the next printing of each set of applicable product packaging; correcting the website; and correcting future advertising where the mark appears." Opposer's taking of these kinds of remedial actions, when considered in conjunction with opposer's plausible explanation of the circumstances surrounding its technical misuse of the registration symbol, militates against a finding of fraudulent intent on opposer's part. *See Independent Grocers' Alliance*

27

*Distributing Co. v. Zayre Corporation,* 149 USPQ 229 (TTAB 1966).

We find that the evidence of record simply fails to establish that opposer's misuse of the registration symbol was undertaken with fraudulent intent or that it constitutes unclean hands. Therefore, we find that applicant has failed to prove this affirmative defense.

**Applicant's Equitable Estoppel Defense**

We turn finally to applicant's assertion of equitable estoppel. In the "Questions Presented" section of her brief (at page 6), applicant identifies one such "question" as "[w]hether or not Opposer is barred by equitable principals [sic] and the fact that it is not damaged, where Opposer has taken no action to stop the use of 'Barb's Buns Bakery' or 'Barb's Buns' during the nine years that Applicant has used the name in the marketplace prior to application for registration." We note that neither applicant nor opposer presented any evidence on this issue at trial, and that opposer presented no argument on the issue in its brief. Likewise, apart from the "Questions Presented" section of her brief quoted above, applicant does not argue or even mention the equitable estoppel issue in her brief. We therefore find that the issue of equitable estoppel was not tried by the express or implied consent of the parties, and

28

we have given applicant's assertion of the issue no consideration.  See Fed. R. Civ. P. 15(b).[14]

**CONCLUSION AND DECISION**

For the reasons discussed above, opposer's pleaded Section 2(d) and non-use grounds of opposition are sustained.  We deem applicant's answer to be amended to include her unpleaded  unclean hands defense, but we find that, to the extent that such a defense would be applicable to the claims opposer has asserted in this proceeding, applicant has failed to make out the defense.  We have given applicant's unpleaded equitable estoppel defense no consideration.

Decision:  The opposition is sustained.

---

[14] We note in any event that, to the extent that applicant is attempting to assert the defenses of laches, acquiescence or estoppel, such defenses generally are not available in an opposition proceeding, and that amendment of applicant's answer to assert any such defense therefore would be futile. *See, e.g., National Cable Television Association v. American Cinema Editors Inc.*, 937 F.2d 1572, 19 USPQ2d 1424, 1432 (Fed. Cir. 1991); *Coach House Restaurant Inc. v. Coach and Six Restaurants Inc.*, 934 F.2d 1551, 19 USPQ2d 1401, 1404-05 (11th  Cir. 1991); and *Turner v. Hops Grill & Bar Inc.*, 52 USPQ2d 1310, 1312 (TTAB 1999).