THIS OPINION IS A
PRECEDENT OF THE TTAB

Hearing:                          Mailed:
September 10, 2009                December 29, 2009

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

Panda Travel, Inc.
v.
Resort Option Enterprises, Inc.
_____

Opposition No. 91174767
to application Serial No. 78639462
filed on May 27, 2005

Opposition No. 91174768
to application Serial No. 78640690
filed on May 31, 2005
_____

Martin E. Hsia of Cades Schutte LLP for Panda Travel, Inc.

Erik M. Pelton of Erik M. Pelton & Associates, PLLC for
Resort Option Enterprises, Inc.
_____

Before Rogers, Walsh and Bergsman, Administrative Trademark
Judges.

Opinion by Bergsman, Administrative Trademark Judge:

    Resort Option Enterprises Inc. ("applicant") filed use-
based applications on the Principal Register for the marks
PANDA TRAVEL, in standard character form (Serial No.
78639462), and PANDA TRAVEL and a panda design, shown below
(Serial No. 78640690), for "travel agency services, namely
making reservations and bookings for transportation," in
Class 39.  Applicant claimed February 29, 1984 as its dates

of first use anywhere and first use in commerce.  Applicant

disclaimed the exclusive right to use the word "travel."



Panda Travel, Inc. ("opposer") filed notices of

opposition against the registration of applicant's marks on

the ground of priority of use and likelihood of confusion

pursuant to Section 2(d) of the Trademark Act of 1946, 15

U.S.C. §1052(d).  Opposer alleged that it has been

continuously using the marks PANDA TRAVEL, PANDA, a panda

design, and other marks consisting of the word "panda" in

connection with travel agency services since at least as

early as 1982 and that applicant's marks are likely to cause

confusion with opposer's marks.

Applicant, in its answers, admitted that it first used

the mark PANDA TRAVEL in connection with "travel agency

services, namely, making reservations and bookings for

transportation" on February 29, 1984, but denied that

priority was not at issue.  Applicant denied the remaining

allegations in the notices of opposition.  In addition,

applicant asserted several affirmative defenses, including,

that opposer abandoned the marks PANDA and PANDA TRAVEL and

laches.

Evidentiary Issues

A.    Whether opposer's document production was timely?

During discovery, applicant requested that opposer identify how it used its marks and produce representative samples of advertising and promotional materials displaying opposer's panda marks.  In written responses to applicant's requests, opposer stated that it would produce business records from which applicant could ascertain the answers and that it would make responsive documents available. Subsequently, opposer timely produced documents identified as Bates Nos. 1-583.  Applicant served follow-up discovery with respect to the advertising of opposer's panda marks. In lieu of responding to applicant's discovery, opposer filed a motion for summary judgment, and applicant filed a cross-motion for summary judgment.  The Board denied both motions and reset trial dates.  Although discovery was closed, the parties were allowed until August 14, 2008 to serve responses to outstanding discovery requests.  On August 14, 2008, opposer served responses, including documents identified as Bates Nos. 584-853, to applicant's outstanding discovery.

Opposer's testimony period opened September 13, 2008. On September 18, 2008, September 19, 2008 and October 1, 2008, opposer served additional documents responsive to applicant's discovery requests (Bates Nos. 854-1176).  On

October 10, 2008, opposer filed notices of reliance that included documents served on applicant after the opening of opposer's testimony period. On October 17, 2008, opposer took the testimony deposition of Lydia Tsui, opposer's President and sole shareholder. In the deposition, opposer sought to introduce documents produced after the opening of opposer's testimony period. During the deposition, applicant objected to the introduction of those documents.[1]

On May 7, 2009, during applicant's briefing period, applicant filed a motion to strike the documents served as discovery responses after the opening of opposer's testimony period. In support of its motion to strike, applicant argued that in view of its initial requests, subsequent follow-up discovery, and opposer's responses, "Applicant believed Opposer had served all documents in its possession, Applicant did not then inquire as to whether Opposer would again supplement its discovery, and Applicant did not believe that other relevant documents existed in opposer's possession."[2]

> Had opposer's late produced
> advertisements been timely produced
> during discovery, Applicant would have
> had a significantly clearer picture of
> the dates during which Opposer claims to
> have used its mark. This "bait and
> switch" whereby Opposer avoided
> presenting evidence of continuous use
> until well into the testimony period,

---

[1] Tsui Dep., p. 31.
[2] Applicant's Motion to Strike, p. 3.

4

and immediately before Ms. Tsui's
deposition has unfairly prejudiced
Applicant by denying Applicant the
opportunity to obtain additional
discovery related to such evidence, and
to otherwise prepare a comprehensive
defense.[3]

In opposition to applicant's motion to strike, opposer

argued that it timely served its written responses to

applicant's discovery by stating that it would produce

business records and documents responsive to applicant's

discovery and that it was only the actual production of

those documents that did not coincide with the written

responses.  According to opposer, there is no requirement

that responsive documents must be produced concurrently with

written responses prior to the close of the discovery period

or before an order to respond to all discovery.[4]

The Board expects parties to cooperate during

discovery.  Each party has a duty to make a good faith

effort to satisfy the reasonable and appropriate discovery

needs of its adversary.[5]

A party served with a request for
discovery has a duty to thoroughly
search its records for all information
properly sought in the request, and to
provide such information to the
requesting party within the time allowed
for responding to the request.  A
responding party which, due to an

---

[3] Applicant's Motion to Strike, pp. 5-6.  Applicant also notes
that the timely production of opposer's documents may also have
affected efforts to settle the case.
[4] Opposer's Response to Applicant's Motion to Strike, pp. 8-9.
[5] TBMP §408.01 (2nd ed. rev. 2004).

> incomplete search of its records, provides an incomplete response to a discovery request, may not thereafter rely at trial on information from its records which was properly sought in the discovery request but was not included in the response thereto (provided that the requesting party raises the matter by objecting to the evidence in question) unless the response is supplemented in a timely fashion pursuant to Fed. R. Civ. P. 26(e).[6]

Applicant's motion to strike opposer's documents first produced after the opening of opposer's testimony period is well taken. Applicant timely requested the production of the documents and opposer produced what purported to be a representative sample. Opposer's production prompted applicant's follow-up discovery. Opposer produced additional documents. Applicant had no reason to believe that opposer's production was anything other than a complete and good faith effort to meet applicant's discovery requests.

We note that opposer obtained copies of its advertisements from the library.

> Mr. Miwa (opposer's counsel): With respect to your objection relating to the foundation for the dates and source, can you be more specific about what the objection is?
>
> Mr. Pelton (applicant's counsel): Well, and we can get to this when I question, just where they came from, how they were produced, and what the - - source was, who gathered them.

---

[6] TBMP §408.02.

6

Mr. Miwa:  But the dates are on the documents themselves.

Mr. Pelton:  Yes, as to the dates - - as to like where it was printed from, I assume this is some sort of microfiche - -

Mr. Miwa:  That's correct.

Mr. Pelton:  - - from a library, but I just want to establish that at some point for the record.

Mr. Miwa:  Well, I can tell you for the record that they were copied from microfiche at the State of Hawaii library and the dates are not only on the borders at times, but they're also - - they also appear as part of the document itself.  Most of the time, there would be an attempt to copy the date of the document itself as part of the document.

The fly sheets are inserted not as part of the document itself, but to assist in dividing up - -

Mr. Pelton:  Sure.

Mr. Miwa:  - - the various advertisements.

Mr. Pelton:  And were they copied in connection with this proceeding or were they previously copied for some other reason?

Mr. Miwa:  They were copied for this proceeding.

Mr. Pelton:  Okay.

Mr. Miwa:  When I say this proceeding, I believe many of these were actually, with respect to your other objection, they were previously produced.  I'd have to refer to the Bates stamp numbering,

7

but I'm sure some of these were part of both.[7]

It is not clear from the record when opposer copied the advertisements and whether opposer copied all of the advertisements at one time. If all the documents were copied at one time, there is no reason that opposer did not timely produce all the documents. If the documents were copied at different times, opposer did not explain to applicant when it copied the documents and how it obtained them thereby leaving applicant (and the Board) with the impression that opposer provided an incomplete discovery response. Accordingly, opposer should not complain when the documents it failed to produce during discovery are stricken at trial. Under the circumstances by which these documents appear to have been gathered, there was no reason for opposer to have delayed producing them until after trial had begun, at least none has been provided by opposer.

Having produced responsive documents, it stretches credulity for opposer to contend that its written responses to the effect that opposer would produce documents responsive to applicant's discovery requests absolves opposer of timely producing other responsive documents in its custody or under its control. Discovery is not an opportunity for opposer to harass applicant with subterfuge and delay. As indicated above, the parties are required to

---

[7] Tsui Dep., pp. 31-32.

cooperate during discovery and each party has a duty to make a good faith effort to satisfy the discovery needs of its adversary. Under the particular circumstances of this case, there was no excuse for the production of documents after trial began. Accordingly, applicant's motion to strike is granted to the extent that we will only consider opposer's documents served prior to the opening of opposer's testimony period (*i.e.,* Bates Nos. 1-854).

B. <u>Whether opposer's notice of reliance adequately identifies the relevance of the documents</u>?

In its motion to strike, applicant objected to opposer's notices of reliance because they do not explain the relevance of the documents. In opposition to applicant's motion, opposer argued that the notices of reliance state that the documents are introduced to show use of opposer's marks. Trademark Rule 2.122(e) provides that the notice of reliance shall "indicate generally the relevance of the material being offered." The notices of reliance are sufficient to explain the relevance of the documents (*i.e.,* the use of opposer's marks). Applicant's motion to strike opposer's documents because of a defect in the notices of reliance is denied.

To the extent an objection has not been specifically addressed above, we have considered the evidence, keeping in mind the objections, and have accorded the testimony and evidence whatever probative value they merit.

## The Record

By rule, the record includes applicant's application files and the pleadings. Trademark Rule 2.122(b), 37 CFR §2.122(b). In addition, the parties introduced the following testimony and evidence:

A.  Opposer's evidence.

1.  A notice of reliance including advertisements displaying opposer's marks featured in the *Star-Bulletin & Advertiser* newspaper and the *Honolulu Advertiser* pursuant to Trademark Rule 2.122(e);

2.  A supplemental notice of reliance including advertisements displaying opposer's marks featured in the *Star-Bulletin & Advertiser* newspaper pursuant to Trademark Rule 2.122(e);

3.  The testimony deposition of Lydia Tsui, opposer's President, Secretary and Treasurer and opposer's sole shareholder, with accompanying exhibits; and,

4.  The declaration of Valarie Yanagihara, a clerk in the accounting department of *The Honolulu Advertiser,* filed pursuant to a stipulation of the parties.

B.  Applicant's evidence.

1.  Notice of reliance including the following items:[8]

---

[8] We did not consider the invoices and receipts related to applicant's newspaper advertisements because these documents may not be filed pursuant to a notice of reliance. To the extent that the receipts were introduced into evidence during Mr.

a. Opposer's responses and supplemental responses to applicant's interrogatories;

b. Newspaper advertisements displaying applicant's marks;

c. A copy of the State of Arizona trade name certification for applicant; and,

d. An article from *Consumer Reports Travel Letter,* March 1992; and,

2. The testimony deposition of Joel Jon Torgerson, applicant's President and CEO, with accompanying exhibits.

<u>Standing</u>

"Any person who believes that he would be damaged by the registration of a mark upon the principal register . . . may, file an opposition . . . stating the grounds therefor." Section 13 of the Trademark Act of 1946, 15 U.S.C. §1063(a). *See also* Section 14 of the Trademark Act of 1946, 15 U.S.C. §1064 in regard to cancellation proceedings. Thus, a party has standing to oppose or petition to cancel if it can demonstrate a real interest in the proceeding. *Lipton Industries, Inc. v. Ralston Purina Co.,* 670 F.2d 1024, 213 USPQ 185, 189 (CCPA 1982). "The purpose in requiring standing is to prevent litigation where there is no real controversy between the parties, where a plaintiff,

---

Torgerson's deposition, they were considered for whatever probative value they may have had.

11

petitioner or opposer, is no more than an intermeddler."

*Id.* To establish a reasonable basis for a belief that one is damaged by the mark sought to be registered, a plaintiff may assert a likelihood of confusion which is not wholly without merit. *Id.*

Lydia Tsui testified that opposer has used the mark PANDA TRAVEL continuously since June 1981 to identify its travel agency services.[9] This testimony is sufficient to demonstrate that opposer has a real interest in this proceeding and, therefore, has standing. *Id.*

Priority

In order for opposer to prevail on its Section 2(d) claim, it must prove that it has a proprietary interest in its panda marks that was obtained prior to either the filing date of applicant's applications for registration or applicant's proven date of first use, whichever is earlier. *Herbko International Inc. v. Kappa Books Inc.,* 308 F.3d 1156, 64 USPQ2d 1375, 1378 (Fed. Cir. 2002); *Otto Roth & Co., Inc. v. Universal Corp.,* 640 F.2d 1317, 209 USPQ 40, 43 (CCPA 1981); *Miller Brewing Co. v. Anheuser-Busch Inc.,* 27 USPQ2d 1711, 1714 (TTAB 1993).

Applicant filed its applications for registration on May 27, 2005 and May 31, 2005; however, Mr. Torgerson

---

[9] Tsui Dep., pp. 24-25.

testified that he was using the word mark PANDA TRAVEL to purchase tickets for customers in late 1983.

> Q.   And when you say you went down to the ticket - - to the airport to pick up the tickets, I assume these are airline tickets?
>
> A.   That's correct.
>
> *    *    *
>
> Q.   And this was in 1983?
>
> A.   Late, real late, in '83.  It was in the winter of '83, most likely.
>
> Q.   And you say that you used the name Panda Travel in connection with these services?
>
> A.   Yes.[10]

Accordingly, for purposes of determining priority of use, applicant's date of first use of the word mark PANDA TRAVEL is construed as December 31, 1983.  *EZ Loader Boat Trailers, Inc. v. Cox Trailers, Inc.,* 213 USPQ 597, 598 n.5 (TTAB 1982) (documentary evidence showed first use in 1977, the month and day were unknown, therefore, the Board could not presume any date earlier than the last day of the proved period).  *See also Osage Oil & Transportation, Inc. v. Standard Oil Co.,* 226 USPQ 905, 911 n.22 (TTAB 1985)

---

[10] Torgerson Dep., p. 61.  We note that applicant admitted that it first used its marks on February 29, 1984.  (Applicant's Answers, ¶16).  We assume that Mr. Torgerson is making a distinction between his personal use of the marks in late 1983 and the use by applicant in February 1984.  Thus, applicant's first use of the word mark PANDA TRAVEL is through a predecessor-in-interest.

13

(evidence established first use in 1968-1969, therefore December 31, 1969 is date of first use).[11]

As indicated above, Lydia Tsui testified that opposer has used the mark PANDA TRAVEL continuously since June 1981 to identify its travel agency services.[12] In addition, opposer introduced into evidence one newspaper advertisement displaying opposer's panda marks for each year between 1983 and 2008, including an advertisement from the February 20, 1983 issue of the *Star-Bulletin & Advertiser* (Bates Nos. 584-585).[13] The 1983 advertisement which is representative of opposer's advertising is shown below.



---

[11] Mr. Torgerson's testimony that he designed the panda logo in 1978 is irrelevant. Mere invention, creation or discussion does not create priority rights. The right to register flows from the use of a mark. *Hydro-Dynamics Inc. v. George Putnam & Co.,* 811 F.2d 1470, 1 USPQ2d 1772, 1774 (Fed. Cir. 1987); *La Maur Inc. v. International Pharmaceutical Corporation,* 199 USPQ 612, 616 (TTAB 1978) (conception of a mark does not establish priority). Moreover, Mr. Torgerson testified that he/applicant did not use the panda logo until applicant was created in 1984. (Torgerson Dep., p. 15).
[12] Tsui Dep., pp. 24-25.
[13] Opposer's notices of reliance.

Ms. Tsui further testified that since 1981 opposer placed advertisements in the Sunday Travel Section of the *Star-Bulletin & Advertiser* and *Honolulu Advertiser* newspapers.[14] In her declaration, Ms. Yanagihara corroborated that the advertisements appeared in the newspapers.

Applicant's argument that opposer did not use its mark in interstate commerce until 2001 is irrelevant. Section 2(d) of the Trademark Act, provides in relevant part:

> No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it …  [c]onsists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously *used in the United States by another* and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. §1052(d) (emphasis added). Section 2(d) only requires prior use; it does not require use in commerce. Accordingly, an opposer claiming priority may rely on intrastate use. *First Niagara Insurance Brokers, Inc. v. First Niagara Financial Group,* 476 F.3d 867, 81 USPQ2d 1375, 1378 (Fed. Cir. 2007); *Maids to Order of Ohio, Inc. v. Maid-to-Order, Inc.,* 78 USPQ2d 1899, 1909 (TTAB 2006) ("Priority may be based on intrastate use of a mark").

---

[14] Tsui Dep., pp. 28 – 30 and 37.

In view of the foregoing, we find that opposer first used the word mark PANDA TRAVEL in June 1981; that opposer first used the panda logo as of February 1983; that applicant, through its predecessor-in-interest, first used PANDA TRAVEL on December 31, 1983; that applicant first used the PANDA TRAVEL and design mark on February 29, 1984; and that, therefore, opposer has prior use.[15]

Likelihood of Confusion

Our determination under Section 2(d) is based on an analysis of all of the probative facts in evidence that are relevant to the factors bearing on the issue of likelihood of confusion. *In re E. I. du Pont de Nemours & Co.,* 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973). *See also, In re Majestic Distilling Company, Inc.,* 315 F.3d 1311, 65 USPQ2d 1201, 1203 (Fed. Cir. 2003). In any likelihood of confusion analysis, two key considerations are the similarities between the marks and the similarities between

---

[15] We note that Ms. Tsui's testimony alone is sufficient to prove that opposer first used its PANDA TRAVEL mark in June 1981. *See National Bank Book Co. v. Leather Crafted Products, Inc.,* 218 USPQ 826, 828 (TTAB 1993) (oral testimony may be sufficient to prove the first use of a party's mark when it is based on personal knowledge, it is clear and convincing, and it has not be contradicted); *Liqwacon Corp. v. Browning-Ferris Industries, Inc.,* 203 USPQ 305, 316 (TTAB 1979) (oral testimony may be sufficient to establish both prior use and continuous use when the testimony is proffered by a witness with knowledge of the facts and the testimony is clear, convincing, consistent, and sufficiently circumstantial to convince the Board of its probative value); *GAF Corp. v. Anatox Analytical Services, Inc.,* 192 USPQ 576, 577 (TTAB 1976) (oral testimony may establish prior use when the testimony is clear, consistent, convincing, and uncontradicted).

the goods. *See Federated Foods, Inc. v. Fort Howard Paper Co.,* 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976) ("The fundamental inquiry mandated by §2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks").

A.   <u>The similarity or dissimilarity and nature of opposer's services and the services described in the application.</u>

Applicant is seeking to register its mark for "travel agency services, namely making reservations and bookings for transportation."  Opposer uses its panda marks to identify travel agency services.[16]  The services are identical.

B.   <u>The similarity or dissimilarity of likely-to-continue trade channels and classes of consumers</u>.

With respect to the channels of trade, an opposer must prove that the services are rendered in the same type of distribution channel as encompassed by applicant's description of services.  *Century 21 Real Estate Corp. v. Century Life of America,* 970 F.2d 874, 23 USPQ2d 1698, 1701 (Fed. Cir. 1992) ("opposer does not have the burden to show sale of an infringing product by a specific chain of supermarkets or agents.  Rather to invoke this *du Pont* factor, an opposer must show the sale of an infringing product in supermarkets or by agents in general").  Because there are no restrictions as to channels of trade in applicant's description of services, we must assume that

---

[15]  Tsui Dep., pp. 22-25.

applicant's travel agency services are rendered in all of the normal channels of trade to all of the normal purchasers for such services, including opposer's channels of trade and purchasers. *Canadian Imperial Bank of Commerce v. Wells Fargo Bank,* 811 F.2d 1490, 1 USPQ2d 1813, 1815 (Fed. Cir. 1987); *Toys R Us v. Lamps R Us,* 219 USPQ 340, 343 (TTAB 1983).

The evidence shows that opposer and applicant render their services in the same channels of trade and to the same classes of consumers. Opposer renders its travel agency services to the general public, average consumers wanting to take trips, corporate accounts, government travel for the State of Hawaii and programs related to the University of Hawaii (*i.e.,* marketing packages in connection with the sports teams).[17] Opposer advertises on the Internet, in the Sunday travel section of the newspaper, and through brochures and flyers.[18] Likewise, applicant is a "full service travel agency" for businesses and individuals, including "the ability to obtain event tickets, such as football games, such as concert tickets." Applicant also advertises in the Sunday travel section of newspapers, online and through flyers.[19]

---

[17] Tsui Dep., pp. 65-67.
[18] Tsui Dep., pp. 28 – 30, 37-38, 70, 84-86.
[19] Torgerson Dep., pp. 18-19, 36, 47-49.

Given that applicant is seeking geographically unrestricted registrations, applicant's argument that "[o]pposer's trade channel is apparently limited to persons in Hawaii in need of travel agency services" is unavailing. The geographically unrestricted registrations applicant seeks would carry the presumption under Section 7(b) of the Trademark Act that applicant has the exclusive right to use the marks throughout the United States in connection with travel agency services. Thus, we may not limit our consideration of likelihood of confusion to the geographic areas in which the parties actually use their marks. Board proceedings are determined independent of the actual geographic scope of use. *Giant Food, Inc. v. Nation's Foodservice, Inc.,* 710 F.2d 1565, 218 USPQ 390, 393 (Fed. Cir. 1983); *Amcor, Inc. v. Amcor Industries, Inc.,* 210 USPQ 70, 77 (TTAB 1981).

In view of the foregoing, we find that opposer and applicant render their travel agency services in the same channels of trade and to the same classes of consumers.

C.  <u>The similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression</u>.

We now turn to the *du Pont* likelihood of confusion factor focusing on the similarity or dissimilarity of the marks in their entireties as to appearance, sound,

19

connotation and commercial impression. *In re E. I. du Pont De Nemours & Co., supra.* In a particular case, any one of these means of comparison may be critical in finding the marks to be similar. *In re White Swan Ltd.,* 9 USPQ2d 1534, 1535 (TTAB 1988); *In re Lamson Oil Co.,* 6 USPQ2d 1041, 1042 (TTAB 1988). In comparing the marks, we are mindful that where, as here, the services are identical, the degree of similarity necessary to find likelihood of confusion need not be as great as where there is a recognizable disparity between the services. *Century 21 Real Estate Corp. v. Century Life of America,* 970 F.2d 874, 23 USPQ2d 1698, 1700 (Fed. Cir. 1992); *Schering-Plough HealthCare Products Inc. v. Ing-Jing Huang,* 84 USPQ2d 1323, 1325 (TTAB 2007); *Jansen Enterprises Inc. v. Rind,* 85 USPQ2d 1104, 1108 (TTAB 2007).

Opposer uses the word mark PANDA TRAVEL and it uses a panda design. Applicant is seeking to register the mark PANDA TRAVEL and the mark PANDA TRAVEL with a panda design. The word marks are identical and the designs, shown below, are similar.

<u>Opposer's Mark</u>      <u>Applicant's Mark</u>

      

20

We find that opposer's marks and applicant's mark are similar in terms of appearance, sound, meaning and commercial impression.

D.   Balancing the factors.

We have reviewed all of the evidence of record and considered all of applicant's arguments, including any arguments not specifically discussed in the opinion, regarding the *du Pont* likelihood of confusion factors.  In view of the similarity of the marks and the identity of the services, channels of trade and classes of consumers, we find that applicant's marks PANDA TRAVEL and PANDA TRAVEL and design for "travel agency services, namely making reservations and bookings for transportation" are likely to cause confusion with opposer's word mark PANDA TRAVEL and its panda design mark for travel agency services.

### Affirmative Defenses

A.   Whether opposer abandoned its marks?

Applicant argues that "[o]pposer has not demonstrated *continuous* use of Opposer's mark without abandonment since its first use of the PANDA TRAVEL mark.  Opposer's evidentiary record, to the extent it is not stricken (see Motion to Strike), is spotty and inconsistent."[20]  (Emphasis in the original).  We disagree.  We find that opposer has proven that it has continuously used the word mark PANDA

---

[20] Applicant's Brief, p. 11.

TRAVEL and the mark comprising a panda design since June 1981. *See* the discussion regarding priority.

B.  Whether opposer's claim is barred by laches or equitable estoppel?

    1.  Laches.

Applicant argues that opposer has allowed applicant to use PANDA TRAVEL for over twenty years without lodging a complaint.

> Opposer has had lengthy actual or constructive knowledge of Applicant's marks and has never attempted to enforce any alleged trademark rights until 2006. As a result, the equitable doctrines of acquiescence and estoppel weigh heavily against allowing Opposer to now, after more than twenty years, to (sic) attempt to enforce any rights.[21]

The laches defense does not apply. Laches begins to run from the time action could be taken. In an opposition, where the objection is to the issuance of a registration of a mark and the plaintiff had prior knowledge of applicant's use, laches starts to run when the mark in question is published for opposition. *National Cable Television Association Inc. v. American Cinema Editors, Inc.,* 937 F.2d

---

[21] Applicant's Brief, p. 14. Applicant's reference to acquiescence is misplaced. Acquiescence is a type of estoppel that is based on the plaintiff's conduct that expressly or by clear implication consents to, encourages, or furthers the activities of the defendant. *Christian Broadcasting Network Inc. v. ABS-CBN International,* 84 USPQ2d 1560, 1573 (TTAB 2007). A plaintiff will not be permitted to stop conduct that it fostered or tolerated, where the result would be prejudicial to the defendant. *Id.* Applicant did not argue or present any evidence that opposer consented to or encouraged applicant's use of its marks.

1572, 19 USPQ2d 1424, 1432 (Fed. Cir. 1991); *Teledyne*

*Technologies Inc. v. Western Skyways Inc.*, 78 USPQ2d 1203,

1210 n. 10 (TTAB 2006).  Because opposer timely filed

notices of opposition, there has been no undue delay by

opposer or prejudice to applicant caused by opposer's delay.

    2.   Equitable estoppel.

    Applicant also contends that opposer's likelihood of

confusion claim is barred by equitable estoppel.[22]

Applicant supports the defense with the following argument.

Applicant has been using its PANDA TRAVEL marks since

December 1983.  When opposer first learned about applicant's

use of the mark PANDA TRAVEL in 1998, it did not raise an

objection.[23]  In fact, opposer's only objection has been the

notices of opposition.  "Applicant has been prejudiced by

its reliance on Opposer's failure to act and its justifiable

assumption that Opposer's business was limited to Hawaii or

was transitioning to use of PANDA ONLINE, PANDA HAWAII, or

one of Opposer's other marks."[24]

    The elements of equitable estoppel are (1) misleading

conduct, which may include not only statements and action

but silence and inaction, leading another to reasonably

infer that rights will not be asserted against it; (2)

reliance upon this conduct; and (3) due to this reliance,

---

[22] Applicant's Brief, pp. 16-17.
[23] Tsui Dep., p. 87
[24] Applicant's Brief, p. 17.

material prejudice if the delayed assertion of such rights is permitted. *Lincoln Logs Ltd. v. Lincoln Pre-Cut Log Homes, Inc.,* 971 F.2d 732, 23 USPQ2d 1701, 1703 (Fed. Cir. 1992). In an opposition proceeding, the equitable estoppel defense must be tied to the registration of applicant's marks, not applicant's use of its marks. *Id.*

With respect to the equitable estoppel defense, the facts set forth below have been introduced into evidence. Applicant first learned of opposer through an e-mail dated March 7, 2005, in which a representative of opposer, Michael Person, opposer's marketing manager,[25] suggested a co-marketing initiative vis-à-vis pandaonline.com (opposer) and pandatravel.com (applicant). Upon receipt of the e-mail, Mr. Torgerson contacted his attorney.[26]

Based on this evidence, we do not find that equitable estoppel applies. First, while opposer suggested a joint business venture based on the identity of the parties' names, we do not find that opposer agreed, or misled applicant into believing, that opposer would not object to the registration of applicant's marks. Second, there is no evidence that applicant relied on opposer's proposal as assurance that opposer would not object to the registration of applicant's marks. In fact, Mr. Torgerson contacted his

---

[25] Tsui Dep., p. 95.
[26] Torgerson Dep., pp. 53-56.

attorney after receiving the e-mail from Mr. Person presumably to discuss legal issues presented by opposer's contact.  Shortly thereafter, applicant filed its applications (the e-mail from Michael Person was in March 2005 and applicant filed its applications in May 2005).  Furthermore, there is no testimony that applicant believed opposer was transitioning from PANDA TRAVEL to PANDA ONLINE, PANDA HAWAII, or any other mark.  Finally, opposer did not delay in asserting its rights; it filed timely notices of opposition.  Because opposer acted at its first opportunity to object to the registration of applicant's marks and opposer made no representation to applicant that it would not oppose applicant's marks, there is no basis for the equitable estoppel defense.

Decision:  The oppositions are sustained and registration to applicant is refused.